## I. B. WILSON v. OLIVER H. GADD.

Western Section.   December 17, 1930.

Petition for Certiorari denied by Supreme Court, April 4, 1931.

Yandell Hann, of Memphis, for plaintiff in error.

Scott P. Fitzhugh, C. S. Seay and John E. Leake, all of Memphis, for defendant in error.

OWEN, J. · This cause was before this court on appeal by the defendant below, I. B. Wilson at a former term of this court and the cause was reversed by this court in an opinion .delivered by Mr. Justice Heiskell, which opinion was filed at the January term, 1927 of this court. The cause was reversed, assignments of error as to the court's charge being sustained and the cause was remanded to the Circuit Court of Shelby county for a new trial. Petitions for certiorari were filed by both parties. The Supreme Court on June 10, 1927, denied both petitions. A petition for a re-hearing was denied by the Supreme Court June 27, 1927.

Upon the second trial there was a judgment in favor of the plaintiff for $1000. The defendant entered a motion for a new trial which was overruled. He has appealed and assigned nineteen errors. These errors will be grouped in four groups.

Assignments 1 and 2 go to the question that there is no material evidence to support the verdict; there should have been a directed verdict for the defendant.

Assignment No. 3 raises the question of the preponderance of the evidence being in favor of the defendant. This assignment is overruled because this court does not weigh the evidence upon ap-

peal from a jury's verdict to ascertain who has the weight or preponderance in the trial below.

Group No. 2 is comprised of assignments No. 4 to No. 7 inclusive. These assignments all complain of certain evidence admitted over defendant's objection.

Group No. 3 is comprised of assignments 8, 9 and 10, which complain as to certain excerpts in the court's charge hereafter referred to as being errors.

Group No. 4 is composed of assignments 11 to 18 inclusive. These complain of nine special requests offered by the defendant which were refused to be charged by the trial judge.

The 19th assignment of error complains of the verdict being excessive.

This court's opinion in the former case is reported in Vol. 4, Court of Appeals, page 582. At the second trial which is now being considered upon this appeal, the facts were practically identical with the facts established at the former trial and we quote from said opinion, which is a part of the present transcript, as follows:

This was an action for an alleged slander. It was originally brought against I. B. Wilson and C. G. Dean, as individuals and as partners, trading as the Quality Laundry; but upon motion at the close of the plaintiff's proof it was dismissed as to C. G. Dean, as an individual.

And at the close of all the proof, after motion had been made, a voluntary non-suit was taken as to the partnership. The suit thereafter remained against I. B. Wilson, as an individual.

The declaration alleged that the plaintiff in error, Wilson, said of and concerning the defendant in error that "one of the drivers of the Success Laundry, Inc., of Memphis, Tennessee had taken a bundle of laundry off a truck belonging to the Quality Laundry in the alley back of the old Hill home, and that the driver's name was Gadd." The declaration also alleged that the meaning of said language used by Wilson was that defendant had stolen said bundle of laundry and was guilty of larceny.

To this declaration there was filed a plea of not guilty.

There was a trial by a jury and a verdict for the plaintiff below for the sum of $3500.

It is undisputed in the record that one Hamilton was the driver of a laundry truck belonging to the Quality Laundry, of which I. B. Wilson, the plaintiff in error, was one of the owners. On October 5, 1925, Hamilton drove his truck into an alley back of what is or was known in Memphis as the old Hill home, located on Madison Avenue just east of Third Street.

In this alley, at the time Hamilton drove in and stopped, were

a wagon and two horse team, with no driver, and the Success Laundry truck, of which Gadd, the defendant in error, was the driver, who, at the time, was just entering the same or some nearby house a little ahead of Hamilton, both drivers being in the vicinity to collect laundry.

Hamilton, the driver of the Quality Laundry truck, remained in the house to which he had gone some ten or fifteen minutes.

When he came back to his truck, Gadd and his truck, and the team and wagon had left, and a bundle of laundry which Hamilton had left on the fender of his truck was also gone.

Thereupon Hamilton went immediately to a telephone, called up Wilson at the Quality Laundry and reported the facts to him as stated above, except Wilson was not advised at that time that Gadd was the driver of the Success Laundry truck. This information was given to Wilson when Hamilton reached the laundry shortly afterwards.

Wilson, from the Quality Laundry, called for Mr. Harrison, owner of the Success Laundry, but Harrison was not in.

Shortly after Hamilton had reached the Quality Laundry, Mr. Harrison, at the Success Laundry, answered Mr. Wilson's previous call, and there was a conversation between the two—Harrison and Wilson—about the disappearance of the bundle of laundry. It was out of this conversation that this lawsuit grows.

It is shown, by Mr. Harrison himself, that the best of feeling and fellowship existed between him and Mr. Wilson, and the two laundries worked in harmony with each other when either needed the assistance of the other.

It is further shown that laundry was at that time, taken by the wrong laundry driver, and sometimes it was intentionally done, and that there was nothing unusual in the interested parties looking into it.

Up to this point there seems to be no controversy about any fact stated.

There is a conflict, however, between Harrison, who testified for the plaintiff below, and Wilson, the defendant below, as to the language, used by Wilson over the telephone.

Mr. Harrison substantially supports the allegation of the declaration as to what was said.

Wilson, on the other hand, says he did not say what Harrison says he did; that he did not charge or intend to charge that Gadd had stolen the laundry, but "related the circumstances of the truck and wagon being in the alley, and the bundle of laundry being gone, and told him it was Gadd's truck that was in the alley, and asked him to look and see when Gadd came in if he got the laundry, or if he could find out anything about it.

We held on the former appeal that the cause should have been submitted to a jury. This court also held that it was necessary for the plaintiff to allege in his declaration, special damages to support a charge where the words used were not slanderous per se.

The Supreme Court, speaking through Mr. Justice Cook, in a memorandum opinion filed June 14, 1927, in a petition for certiorari, said:

"We do not concur in the conclusion that the innuendo or inducement used to characterize words of double meaning as defamatory destroys the character of the imputation if the words used reasonably convey an accusation of an infamous offense. Newell, Slander & Libel, 769. If the direct charge of larceny is actionable per se, the use of words intended to, and reasonably calculated to impute larceny, would have the same effect as th direct charge.

While we do not concur in the conclusion of the Court of Ap peals as to the necessity of allegation and proof of special damage: to support a charge or the imputation of larceny, we concur in the court's finding that the trial judge erred in the following portion of his charge to the jury.

"So you gentlemen are called upon to determine from the evidence you have heard, first, what language was used by Mr. Wilson in his conversation over the telephone with Mr Harrison. Then, after you have determined substantially what language was used, it is your duty to determine from all the evidence whether it was the intention of Mr. Wilson, by the language used, to charge Mr. Gadd with the theft of that laundry. If you find it was the defendant is liable. If you find it was not his intention to do that, the defendant is not liable."

The trial judge should have submitted to the jury the question of whether or not Wilson used the words charged in the declaration; if so, whether he intended by their use to charge that Gadd carried the bundle of laundry away with felonious intent; and whether or not Harrison so understood.

A taking is not always theft and so an accusation of taking would not be slanderous unless used in the sense and with intent to charge larceny. Wilson had the right to make the inquiry of Harrison as a means of discovering the loss of the package, and the trial judge should have so instructed the jury. Especially so since the naked words as declared in the declaration may reasonably carry the double meaning, one injurious and the other wholly innocent.

Writ denied."

The same argument is now made as to assignments 1 and 2 that

were made on the former appeal and which were disposed of adversely to the defendant so far as stating that this cause should have been submitted to the jury. The defendant further insists that the conversation between Wilson and Harrison, in regard to the plaintiff was privileged.

We are of the opinion that it was not a privileged communication not intended to be by Wilson at the time he uttered the statement to Harrison in regard to Gadd taking the laundry, furthermore, Wilson filed a plea of not guilty which plea denies that he uttered the words complained of. There is no plea of justification and no plea that the communication was a privileged communication.

The assignments in group No. 1 are overruled.

As to group No. 2, it is first, insisted that Harrison's testimony as to what the defendant said was incompetent. We think Mr. Harrison's evidence was competent to relate the accusation that was made by the defendant, Wilson, the substance of the conversation. It was also shown by Harrison that he employed in his plant about 125 employees and that a number of these heard his conversation with the defendant and it was soon made known throughout the laundry plant that Gadd had been accused of getting a bundle of laundry that belonged to Wilson's laundry.

Assignment No. 4 also complains of evidence related by the plaintiff.

There was also objection to the testimony of the witness J. C. Ellis and other witnesses as to the circulation or rumor connecting Gadd with the taking of the bundle of laundry, on this line of evidence the court said:

"I will sustain the objection to any evidence of any particular people to whom this, 'the charge against Gadd,' has been repeated, and I will exclude the evidence we have heard on that point. Whoever has appeared here who heard about it, and repeated it, the court sustains the objection."

It is insisted that the defendant could not be charged with the circulation of the report; that he had nothing to do with Harrison's scattering it among his 125 employees, and with their carrying it into their various communities.

"The ruling of the court met the defendant's objection only in part. It left the jury to freely infer a greater or lesser circulation, as its individual members might please or be inclined—just pure guess work on their part."

We are of the opinion that the court went far enough in excluding the evidence that was excluded. It was competent to show by evidence that certain employees overheard the conversation be-

tween the defendant and Harrison and they knew that the defendant was accusing Gadd of taking a bundle of laundry.

We find no error in the action of the court with reference to the admission or exclusion of testimony and the assignments that are embraced in group No. 2 are overruled.

In group No. 3 we have complaints made as to the charge of the court. It is insisted, first, that the court did not fully state the defendant's theory. The court said:

"The theory of the defendant is that he called up Harrison for the purpose of seeking his aid in locating his laundry; that he had no intention whatever of charging Gadd with it—with the theft of the laundry, but his purpose was merely to find out if Mr. Harrison had received the laundry at his place of business."

This was the defendant's theory and the court properly left it to the jury to decide whether the defendant used the language testified to by Harrison or was the language used in the manner and way the defendant insisted it was used. The court told the jury that the defendant denies that he had any intention of charging Gadd with stealing the laundry and the court stated to the jury, "That, gentlemen of the jury, makes the issue of fact for the jury."

We have read the entire charge of the court. We find no reversible error as to the refusal of the nine special requests. By the first one, the defendant insisted that the plaintiff would have to prove special damages. This was contrary to the ruling of the Supreme Court in this identical case. Two of the special requests asked the court to charge that the communication between the defendant and Harrison was privileged and that there could be no recovery unless actual malice was shown. The court properly refused these two instructions. The defendant also requested that the court should charge that plaintiff was not entitled to punitive damages; as no punitive damages were assessed this assignment should not be considered.

We are of the opinion that there is no error in refusing the special requests offered, they were either fully covered in the charge of the court or properly refused for the reasons heretofore stated. The law of this case was properly stated in the memorandum opinion of the Supreme Court by Mr. Justice Cook, and we quote from it as follows:

"Words not actionable per se when not aided by an innuendo may become such by proper innuendo. 11 L. R. A., 162, Anno. Cas., 1916A, 1195. Where words have two meanings one innocent and the other injurious, the innuendo may serve to point out the injurious meaning. 17 R. C. L., 395. But the meaning must be de-

termined from the words charged and not from the innuendo which can add nothing to the words charged.

In determining whether or not the words charged carry an imputation of crime so as to become actionable per se, rules of pleading and of evidence must not be confused with the substantive law. Words which on their face carry an imputation of larceny are actionable per se (Smith v. Smith, 2 Sneed, ·478), as much so as words which may be the direct charge of larceny.

In the application of rules of pleading defamatory words are classified as, (1) obviously defamatory. (2) Ambiguous and apparently defamatory but susceptible of an innocent meaning. (3) Apparently innocent but capable of defamatory. The innuendo is not necessary to support the pleading that charges obviously defamatory words, or apparently defamatory words, but in charging words apparently innocent, used with intent to carry a defamatory meaning, and so understood by the hearers, a declaration would be bad without the imputation required to apply the ·meaning.

The exigency of pleading that compels use of the inducement and innuendo to charge the imputation of an infamous crime in an action of slander cannot impair the rule that words imputing infamy are slanderous per se and compensable without proof of special damages. Where the declaration charges the use of words that carry both an innocent and defamatory meaning, and the slanderous application is made by inducement and innuendo, in testing the pleading it is a question of fact to be determined by the court, without reference to the innuendo as to whether or not the words charged carry the defamatory meaning alleged. If so, the pleading is good and it then becomes a question of fact for the jury to determine whether the words were used with defamatory intent or not. Newell, Slander & Libel, sec. 17, page 281; Woodruff v. Bradstreet Co:, 5 L. R. A., 555.

If the words charged were used with intent to impute larceny, and are such as reasonably convey that meaning they would be actionable per se, but the words used must authorize the inference without aid from the innuendo, whose office is merely to direct attention to the meaning. Anno. Cas., 1916E, 900.

Apparently in conflict is the rule stated in 36 C. J., paragraph 17, page 1150, to the effect that words which carry a hidden meaning, used with defamatory intent, and so understood by those addressed may become actionable per quod, that is, upon allegations and proof of special damages. However, in Anno. Cas., 1916E, 905, it is said' that the innuendo can not alter or extend the sense of the words, or make that certain which is in fact uncertain, and it is for the judge to decide whether a publication is capable of the

meaning ascribed by an innuendo, and for the jury to decide whether such meaning is truly ascribed to it.''

On the question of the verdict being excessive, the trial court approved it for $1000 and in overruling the motion for a new trial the trial judge said:

''It occurs to the court that this case might have been one which was close on the facts had it not been for the· fact which cropped out in both trials, that when the plaintiff heard that Wilson had made a complaint against him, he telephoned Wilson and told him, 'I am the man you charged stole your laundry, and I would like to come and see you about it.'' Instead of Wilson telling him that he had not charged him with stealing, he told him that he had placed the matter with detectives, and refused to discuss it. Such an attitude on the part of the defendant is not consistent with the theory that Wilson was in good faith trying to locate his laundry. A great deal was said during the trial about drivers getting laundry which was intended for other drivers, and taking it to their own laundry to be laundered, and it was admitted that from time to time such mistakes occur. This, however, occurs only when the laundry is taken from the home of the owners. Where laundry is taken or said to have been taken from a truck on which it had been placed, there could be no such mistake. Furthermore, if the defendant had believed that Gadd had mistakenly or otherwise taken the laundry for the purpose of having it laundered, and returning it to the owner, it would have been the natural thing for him, when confronted by Gadd with the statement that he had accused him of stealing the laundry, to deny having made such an accusation, and explain what he said and his purpose and meaning in saying it.''

We do not think this verdict is excessive. Two juries have found the issues at each trial in favor of the plaintiff. Both verdicts were approved by the trial court. We found prejudicial error in the charge of the court at the first trial and reversed and remanded the case.

We are of the opinion that the defendant has now had a fair and impartial trial. It results that all the assignments of error are overruled and disallowed. The judgment of the lower court is affirmed. The plaintiff will recover of the defendant $1000 with interest from the date of the rendition of the judgment in the lower court, and the plaintiff will recover of the defendant and his surety on appeal bond, the costs of the cause for which execution will issue.

Heiskell and Senter, JJ., concur.