# KNOXVILLE PUB. CO. et al. v. TAYLOR et al.—215 S. W. (2d) 27.

Eastern Section.   July 14, 1948.

Petition for Certiorari denied by Supreme Court, October 16, 1948.

Frantz, McConnell & Seymour and E. B. Foster, all of Knoxville, for plaintiffs in error.

Taylor & Badgett, of Knoxville, for defendants in error.

McAMIS, J. These two suits, tried together in the Circuit Court and here on appeal by the defendants Knoxville Publishing Company, Roy N. Lotspeich and Guy L. Smith, are actions in tort based upon an alleged libel appearing in the Knoxville Journal on September 24, 1946, in the following language:

"Waive Hearing

"Joe Neal Taylor and Mrs. Sarah Taylor, of 1758 Blount Avenue, were bound to the grand jury yesterday under $1000 bonds after waiving preliminary hearing in General Sessions Court. They are charged with receiving and concealing more than $50.00 worth of stolen property, officers said."

The Knoxville Journal is a daily newspaper having a circulation of over 92,000 published by the Knoxville Publishing Company, a corporation. Roy N. Lotspeich is president of the publisher, Knoxville Publishing Company, and Guy L. Smith is the editor of the Knoxville Journal. Their liabilities as individuals will require separate consideration.

A motion for peremptory instructions made by the three defendants at the close of all the evidence was overruled and a verdict for $200.00 in each case was approved by the court in overruling defendants' motions for a new trial. By the assignments it is insisted the publication is not libelous per se; that, if libelous per se, as shown by undisputed evidence, it was made purely by mistake and without malice and promptly retracted as soon as the

mistake was discovered; that no actual damages have been shown and, for all of these reasons, the court erred in not directing a verdict for defendants. It is also insisted in behalf of the individual defendants, Lotspeich and Smith, that the evidence fails to connect them in any way with the alleged libel and, for that further reason, a verdict in their favor should have been directed. Other questions relate to the refusal of the Court to grant a new trial for errors in the charge.

A brief chronological statement of events will suffice. A few days prior to September 24, 1946, the date of the publication, a stepson of plaintiff, Joe Neal Taylor, who was also the son of Mrs. Taylor, was arrested on the charge of receiving stolen property. Mr. and Mrs. Taylor became sureties on his appearance bond in the General Sessions Court. Reporter Rainey of the Knoxville Journal, at about 5:20 P. M. on September 23rd, in examining the records of the court proceedings for that day, saw the names of Mr. and Mrs. Taylor on the bond and, without examining the warrant or making other investigation, mistakenly assumed that they were charged in the warrant as defendants. Rainey testified that the mistake was due to the inadequate time allowed for examining the court records and to his great haste in completing the task. The following day the item was published under court news, according to Rainey, as a "filler". The present suits were filed September 27, 1946 and the following appeared on the front page of the Journal on September 28, 1946:

"Apology Given to Taylors by Journal

"The Knoxville Journal regrets that the citizens who signed the bond were erroneously named defendants in a General Sessions record reported in the September 24 edition.

"Thomas N. Edwards was bound to the grand jury Sept. 23 under $1000 bond after waiving preliminary hearing in General Sessions Court on charges of receiving and concealing stolen property. Mr. and Mrs. Joe Neal Taylor, Blount Avenue, erroneously reported as defendants, were securities who made bond for Edwards, their kinsman.

"The Knoxville Journal was unaware of the error until it was learned that a law suit was filed against the newspaper yesterday in Circuit Court by Mrs. Taylor. The Journal extends its apologies to Mr. and Mrs. Taylor."

We agree with the Circuit Judge that the publication is libelous per se and that it was unnecessary for plaintiffs to prove malice or actual damages. The rule is firmly established that the false statement or imputation of the commission of a crime involving moral turpitude is libelous per se and damages are presumed to accrue as a matter of law. See Williams v. Karnes, 23 Tenn. 9, 10; Fry v. McCord, 95 Tenn. 678, 685, 33 S. W. 568; Travis v. Bacherig, 7 Tenn. App. 638, 644; Little Stores v. Isenberg, 26 Tenn. App. 357, 362, 172 S. W (2d) 13. Consistently, larceny or a charge imputing larceny is held libelous per se. Wilson v. Gadd, 13 Tenn. App. 6; Little Stores v. Isenberg, supra.

It is insisted, however, that the commission of a crime is neither directly charged nor necessarily imputed in the publication upon which the present actions are based. We cannot agree. The rule to be deduced from the uniform holdings is that a false publication charging that one has been indicted or arrested for crime is governed by the same principles as direct accusations of crime and is libelous per se. Hanson v. Krehbiel, 68 Kan. 670, 75 P. 1041, 64 L. R. A. 790, 104 Am. St. Rep. 422; Brewer

v. Chase, 121 Mich. 526, 80 N. W. 575, 46 L. R. A. 397, 80 Am. St. Rep. 527; Thorson v. Albert Lea Pub. Co., 190 Minn. 200, 251 N. W. 177, 90 A. L. R. 1169; Jones v. Townsend, 21 Fla. 431, 58 Am. Rep. 676; Witham v. Atlanta Journal, 124 Ga. 688, 53 S. E. 105, 4 L. R. A., N. S., 977.

There was no error in charging the jury that the publication was libelous per se and in refusing to direct a verdict for the corporate defendant.

■ However, we think the motion should have been sustained as to the individual defendants. There is authority for holding that there is a presumption of fact that those in authority and managing the publication of a newspaper are cognizant of libel appearing in its columns and should be held personally responsible for its consequences without proof of actual knowledge and participation. But, at most, there is a mere presumption in any case. To apply it against the managers of a large daily newspaper published by a corporation having a great number of employees and reporters we would have to shut our eyes to reality. Mere dogma should not be substituted for logic, common sense and reason. Whatever justification may be found in holding the editor or managing head of a small newspaper liable under the presumption of fact that he not only knew beforehand what was to be published but the lack of authenticity of the matter published or that he had some intimate knowledge of the source of information there is no basis for such a presumption in the case of a large daily newspaper whose sources of news are numerous and far flung. "The reason of the law is the soul of the law and when the reason fails the rule should not apply."

We think the better rule is that adopted in Folwell v. Miller et al., 145 F. 495, 496, 75 C. C. A. 489, 10 L. R. A.,

N. S., 332, 7 Ann. Cas. 455, where the Court, after referr-
ing to what are termed "authorities of trivial import-
ance" holding to the contrary, said:

"Notwithstanding these adjudications, we are not con-
vinced that the editor's libility is commensurate with that
of the proprietor. Of course, he is liable equally with the
proprietor when he has personnally assisted in any
manner in the preparation, revision, or otherwise of the
publication of the libel. There is doubtless a presumption
of fact that the managing editor has supervised the con-
tents of the newspaper and performed the duties of his
office in that behalf. . . . But, when it appears affirma-
tively that he was not on duty during any part of the time
between the reception of the libelous matter by the news-
paper and the publication, and could not have any actual
part in composing and publishing, we think he cannot be
held liable without disregardng the settled rule of law by
which no man is bound by tortious act of another over
whom he has not a master's power of control."

In this case it affirmatively appears that the libel
resulted solely from the negligence of the reporter who
was the agent of the corporation—not of its president or
of the editor. Respondeat superior therefore does not
apply as to them. And, though it appears from the evi-
dence that it was not the duty of the editor or the pre-
sident of the corporation to check items such as the one
here involved, if such a check had been made and the pre-
sence of the item noted, its falsity could not have been de-
tected except by checking the court records and it can
hardly be said that either of the individual defendants.
was guilty of any dereliction in not making such a check.

We are asked to reverse the judgment and re-
mand the case for a new trial because the court first
charged and then withdrew a statement taken from the

opinion in Banner Publishing Company v. State, 84 Tenn. 176, 57 Am. Rep. 216, as follows: "If a publication is made bona fide and without malice, even though the truth can not be shown, our courts and juries are not disposed to be severe with offenders." That was a criminal action. The present case is civil and is controlled by different rules and it was doubtless for this reason that the charge was withdrawn. We think there was no error in so doing.

It is also insisted a new trial should be granted because the court refused to instruct the jury as requested that the retraction and apology quoted above was sufficient as a matter of law and should be considered by the jury in mitigration of damages.

The rule is that in order to be considered as mitigating the damages the retraction of a libel should admit the defamation in language free from ambiguity, admit it was unfounded and made without proper information, and offer the regrets and apology of the publisher. It should be frank, fair and unequivocal and should not be mixed with an attempted justification. Annotation 13 A. L. R. 796 et seq.

The cases are not entirely agreed as to whether the question of the sufficiency of the retraction is a question of law for the court or one of fact for the jury, 53 C. J. S. Libel and Slander, sec. 230, page 352; 33 Am. Jur. 258. We think if reasonable minds might differ as to whether it was published within a reasonable time after discovery of the libel by the publisher, whether it was given proper prominence and whether it was otherwise reasonable, adequate and fair the question is one for the jury. To what extent, if any, it mitigated the damages is clearly for the jury to say.

We think the question of the sufficiency of the retraction offered in this case was properly submitted

to the jury. It was not made until after suit was filed though it is fair to note that the publisher did not discover the error until after suit was filed. The language of the first paragraph is not entirely free of ambiguity. It can be interpreted as though the issue of September 24th merely carried a report of the court record which erroneously named the Taylors as defendants. A reasonable mind might therefore conclude that it was not a frank, unequivocal and unambiguous admission of the libel as, under the authority cited, it must be before its sufficiency may properly be determined as a matter of law. Moreover, the smallness of the verdict rather tends to the conclusion that the jury accepted the retraction at full value and mitigated the damages.

The judgment to be here entered will affirm the judgment as to the corporate defendant which will pay all the costs including costs of appeal and dismiss the suits as to the individual defendants, Smith and Lotspeich, as on directed verdicts.

Howard and Goodman, JJ., concur.