Robert **FLEMING**, Plaintiff,

v.

**KANE COUNTY, et al.**, Defendants.

No. 85 C 8641.

United States District Court,
N.D. Illinois, E.D.

May 27, 1986.

Heidi Katz, Fawell, James & Brooks, Naperville, Ill., for plaintiff.

Theodore G. Schuster, Casey & Krippner, Geneva, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Robert Fleming ("Fleming") sues Kane County ("County") and County's Highway Superintendent Nabi Fakroddin ("Fakroddin"), asserting claims under:

1. 42 U.S.C. § 1983 ("Section 1983") for violating Fleming's First Amendment rights; and

2. Illinois common law for committing the tort of retaliatory discharge.

Fakroddin has responded in part with a defamation counterclaim (the "Counterclaim").

Fleming has now moved under Fed.R. Civ.P. ("Rule") 12(b)(1) and 12(b)(6) to dismiss the Counterclaim. Fakroddin has again reacted, this time with a Rule 12(f) motion to strike two of Fleming's affirmative defenses to the Counterclaim. For the reasons stated in this memorandum opinion and order:

1. Fleming's motion is granted in part but denied in principal part.

2. Fakroddin's motion is granted.

3. Fleming's Affirmative Defense II is also stricken, in that instance sua sponte.

### *Facts* [1]

From January 1, 1968 to June 7, 1984 Fleming—a registered civil engineer— worked as County's Assistant Superintendent of Highways (Complaint ¶¶ 1, 7). In August 1983 County requested bids on a contract to improve County Highway 83 ("Orchard Road") by constructing an overpass over Illinois Highway 5 (*id.* ¶ 9). County's original bid specifications · required the contractor to excavate "borrow" material, needed for the overpass foundation, from property owned by County's Forest Preserve District and located three miles from the construction site (*id.* ¶¶ 10–11). In response to inquiries from several prospective bidders, Fleming asked then Superintendent William Carter ("Carter") to change the borrow site (*id.* ¶ 12). Carter refused (*id.* ¶ 13).

County awarded the overpass construction contract to A.J. Maggio Co. ("Maggio") for $1,163,700 (*id.* ¶ 14). Maggio's bid on the borrow specification was substantially lower than quotes submitted on that item by other bidders (*id.* ¶ 15). After Maggio began construction in September 1983, County changed the borrow site and thereby reduced Maggio's costs in supplying borrow material (*id.* ¶ 16). Accordingly Fleming urged Carter either to relet the contract or to lower the price County paid for the borrow material (*id.* ¶¶ 17–18). Carter rejected both suggestions (*id.*).

Fleming then attempted unsuccessfully to meet with various members of County's Board of Commissioners to discuss possible bidding irregularities in the Orchard Road contract (*id.* ¶¶ 20–21). In January 1984 Fleming reported the borrow-pit switch to County's State's Attorney, the Illinois Attorney General and the FBI (*id.* ¶ 22).

In January 1984 Superintendent Carter resigned (*id.* ¶ 19). Fakroddin took the vacated Superintendency position March 1, 1984 (*id.* ¶ 23). Thereafter Fakroddin assertedly pursued a course of conduct designed to manufacture cause for Fleming's dismissal (*id.* ¶ 24), allegedly by:

1. keeping a diary of Fleming's activities and each of Fakroddin's conversations with Fleming;

2. polling Highway Department personnel to determine whether they would prefer to be supervised by Fleming or by "Others," and recommending they vote for "Others";

3. requiring Fleming to visit six universities in Illinois and Wisconsin to investigate enrolling in a management course; and

4. twice suspending Fleming without pay for one week.

On June 7, 1984 Fakroddin fired Fleming (*id.* ¶ 25). Fleming unsuccessfully appealed his dismissal to a grievance committee and then to the Executive Committee of County's Board of Commissioners (*id.* ¶¶ 26–27).

Before Fleming's dismissal, he and Fakroddin engaged in several arguments (*id.* ¶ 25). On April 24, 1984 and June 7, 1984 Fleming maliciously made the following false statements in the presence of several persons (Counterclaim ¶ 5):

1. Fakroddin "doesn't have the guts to fire."

2. Fakroddin "wouldn't make a pimple on a [sic] engineer's ass."

3. Fakroddin was a "liar," a "gutless bastard" and a "black son of a bitch." [2]

Those statements injured Fakroddin's personal and professional reputations (*id.* ¶ 7).

---

**1.** For purposes of both motions, this Court has accepted as true the Counterclaim's well-pleaded factual allegations, drawing all reasonable factual inferences in Fakroddin's favor. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985). Allegations of the Complaint are included only by way of background, so they are not accepted (or for that matter rejected) for current purposes.

**2.** Nothing in the pleadings identifies Fakroddin's color or race. Fakroddin final Mem. 3 says he "is Pakistani, and is not black."

*Jurisdiction over the Counterclaim*

Fleming first contends this Court lacks subject matter jurisdiction over the Counterclaim. That notion involves two steps:

1. Fakroddin's defamation claim lacks an independent federal jurisdictional basis.

2. Fakroddin's Counterclaim is permissive under Rule 13 and hence falls outside this Court's ancillary jurisdiction as well.

Because the first proposition is really undisputed, only the second requires examination.

Rule 13 reads in relevant part:

(a) **Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

*   *   *   *   *   *

(b) **Permissive Counterclaims.** A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

That dichotomy between "compulsory" and "permissive" counterclaims is framed by our Court of Appeals in terms of a "logical relationship" test. As *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278, 1291 (7th Cir.1980), *rev'd on other grounds,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981) (citations omitted) put it:

We have observed that whether a particular counterclaim should be considered compulsory depends not so much on the immediacy of its connection with the plaintiff's claim as upon its logical relationship to that claim.... This test is to be applied flexibly in order to further the policies of the federal rules in general and Rule 13(a) in particular.

In turn those "policies" underpinning the "logical relationship" concept have been succinctly stated (though by another Court of Appeals) in *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 634 (3d Cir.1961):

The phrase "logical relationship" is given meaning by the purpose of the rule which it was designed to implement. Thus, a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action.

Here the Counterclaim plainly bears the requisite "logical relationship" to Fleming's claim. Fleming alleges County and Fakroddin fired him in retaliation for whistleblowing activity protected by the First Amendment. Fleming describes a series of events, from March 1984 to June 1984, during which Fakroddin allegedly harassed Fleming, seeking to fabricate a reason to fire him. Fakroddin counters with the charge Fleming slandered him during that same course of events. Certainly the claims derive from the same factual matrix and bear on the same issues—indeed, at least some of the complained-of language was uttered on the day Fleming was fired, and Fakroddin's responsive Mem. 9–10 announces his intention to point directly to Fleming's asserted slander as a basis of Fleming's dismissal. *Appletree v. City of Hartford,* 555 F.Supp. 224, 229–30 (D.Conn. 1983) found just such a relationship satisfies Rule 13(a):

The similarity of facts in dispute when a counterclaim is based on a libelous publication contemporaneous with the transaction complained of in the original dispute is sufficient to meet the "logical relationship" test.

Accordingly the Counterclaim is "compulsory" under the literal language of Rule 13(a) and the cases announcing the relevant standard, and this Court may properly exercise ancillary jurisdiction over the Counterclaim. Fleming's Rule 12(b)(1) jurisdictional motion to dismiss is denied.

### Rule 12(b)(6) Motion

Turning to Rule 12(b)(6), Fleming moves to dismiss the Counterclaim for two reasons:

1. Fleming's alleged defamatory remarks do not constitute libel per se.

2. Fakroddin has not adequately alleged malice.

Neither contention succeeds, for the reasons next discussed.

### 1. Per Se Libel?

Fakroddin alleges no special damages.[3] Hence his "right to recover rests on whether the allegedly defamatory statements are actionable *per se.*" *Meyer v. Allen,* 127 Ill.App.3d 163, 164, 82 Ill.Dec. 136, 137, 468 N.E.2d 198, 199 (4th Dist.1984). *Fried v. Jacobson,* 99 Ill.2d 24, 27, 75 Ill.Dec. 398, 400, 457 N.E.2d 392, 394 (1983) (citations omitted) is the most recent definitive statement of that ancient-vintage doctrine:

An action for defamation based on libel *per se* requires that the words used are in and of themselves so obviously and naturally harmful that proof of special damages is unnecessary.... In Illinois, under the common law, four classes of words, if falsely communicated, give rise to a cause of action for defamation without a showing of special damages. They are:

"1. Those imputing the commission of a criminal offense;

2. Those imputing infection with a communicable disease of any kind

which, if true, would tend to exclude one from society;

3. Those imputing inability to perform or want of integrity in the discharge of duties of office or employment;

4. Those prejudicing a particular party in his profession or trade."

And *Chapski v. Copley Press,* 92 Ill.2d 344, 352, 65 Ill.Dec. 884, 888, 442 N.E.2d 195, 199 (1982) had just one year earlier restated the "rule of innocent construction" used in applying the per se test:

We therefore hold that a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se.* This preliminary determination is properly a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory or to refer to the plaintiff is a question for the jury should the initial determination be resolved in favor of the plaintiff.

Fleming contends none of the alleged defamatory statements:

1. imputes any inability to perform or want of integrity in the discharge of Fakroddin's duties; or

2. prejudices Fakroddin in his profession as a civil engineer.

He is partly right and partly wrong.

■ As to the pejoratives "gutless bastard" and "black son of a bitch," the reasoning of *Irving v. J.L. Marsh, Inc.,* 46 Ill.App.3d 162, 166, 4 Ill.Dec. 720, 722, 360 N.E.2d 983, 985 (3d Dist.1977) (citation

---

**3.** Counterclaim ¶ 9 says the defamatory statements caused Fakroddin "great loss of financial gain that he otherwise would have made now or in the future ... in the sum of $50,000.00." But Rule 9(g) provides:

When items of special damages are claimed, they shall be specifically stated.

Fakroddin asserts no basis whatever for the $50,000 figure, so he fails Rule 9(g)'s standard. See *Action Repair, Inc. v. American Broadcasting Cos.,* 776 F.2d 143, 149–50 (7th Cir.1985). Fakroddin seems to concede that point, for his briefs focus exclusively on establishing libel per se.

omitted) (rejecting "arrogant nigger" as libelous per se) is equally applicable here:

> Plaintiff urges us to reconsider the scope and exclusiveness of the four categories of *per se* defamation adopted in the *Whitby* [*v. Associates Discount Corp.*, 59 Ill.App.2d 337, 207 N.E.2d 482 (3d Dist.1965)] rule and hold that while defendant's conduct does not come within the literal meaning of any of the four categories, it is nevertheless defamatory *per se*. Defendant's conduct was abusive, offensive, and indecent, but we do not believe it comes within any of the four categories of defamation *per se*, nor is the character of the words sufficiently injurious to plaintiff's reputation that they should be included in the rule as defamatory *per se*.

> \* \* \* \* \* \*

Count two of the amended complaint ... added an allegation that plaintiff was an architecture student and the words imputed to him an inability to perform the duties of his course of study and in his chosen profession. By so amending his complaint to add the foregoing, plaintiff sought to bring himself within the *per se* category of defamation which proscribes words imputing an inability to perform or want of integrity in discharge of duties of office or employment.... In arguing that the racial slur "nigger" implies that an individual is generally lacking in the virtues of honesty, intelligence or creativity, we believe plaintiff attributes a definition to the word that is far in excess of its meaning. The words used by defendant's salesman do not impute an inability to perform or want of integrity in the discharge of the duties of office or employment.

Fakroddin's professional abilities are similarly not implicated by calling him a "gutless bastard" and "black son of a bitch."

■ But "liar" stands on a different footing. That does suggest a lack of integrity in the discharge of Fakroddin's duties.

*Wade v. Sterling Gazette Co.*, 56 Ill.App.2d 101, 205 N.E.2d 44 (3d Dist.1965)—sought to be adduced by Fleming in his own support—does not hold "liar" can never be libelous per se. Instead *Wade, id.* at 107–08, 205 N.E.2d at 48–49 held calling someone a liar *in a particular instance* did not amount to libel per se. However, *Wade* clearly suggested using "liar" to imply a person is generally dishonest can meet the per se test. Here the Counterclaim carries the reasonable construction that, in context, Fleming used "liar" to impugn Fakroddin's character as a professional. That allegation therefore withstands Fleming's motion to dismiss.

■ Fleming finally contends the two remaining alleged defamatory statements—Fakroddin "doesn't have the guts to fire" and "wouldn't make a pimple on a [sic] engineer's ass"—are mere statements of opinion and so non-libelous as a matter of law under such cases as *Naked City, Inc. v. Chicago Sun Times*, 77 Ill.App.3d 188, 190, 32 Ill.Dec. 661, 662, 395 N.E.2d 1042, 1043 (1st Dist.1979):

> While false statements of fact receive no constitutional protection, the expression of an opinion can never be false so as to constitute a false statement of fact.

But *Chapski*, 92 Ill.2d at 352, 65 Ill.Dec. at 888, 442 N.E.2d at 199 emphasizes:

> We point out, however, that the innocent-construction rule requires language to be so treated [as a constitutional expression of opinion] only where that characterization, too, is a reasonable one.

Here the plain meaning of the alleged statements is to cast aspersions on Fakroddin's abilities as a civil engineer and as County's Highway Superintendent. This Court cannot say as a matter of law that Fleming's statements were mere expressions of opinion, and they too survive dismissal.[4]

---

**4.** If Fleming used "gutless bastard" in the same conversation as "doesn't have the guts to fire" rather than on another occasion, the first epithet might well be actionable in conjunction with the second statement.

## 2. Malice

■ Because Fakroddin is a public official, under the Constitution he must prove Fleming acted with actual malice. *Woods v. Evansville Press Co.*, 791 F.2d 480, 483–484 (7th Cir.1986) (our Court of Appeals' most recent adherence to the *New York Times v. Sullivan* "public official" standard). Fleming Mem. 12 and R. Mem. 5 then argue Fakroddin's Counterclaim does not sufficiently allege malice. But Counterclaim ¶ 5 alleges Fleming acted:

> maliciously and with intent to cause it to be believed that the Counter-Plaintiff was an unfit person to engage in his profession as a civil engineer and continue as the Superintendent of The Kane County Highway Department, and pursuant to a preconceived policy and intent to injury [sic] Counter-Plaintiff in his profession and business reputation....

Fleming invokes Illinois law to urge Fakroddin must allege facts supporting an inference of actual malice. But that misperceives the source of pleading requirements in federal courts. *Hernas v. City of Hickory Hills*, 507 F.Supp. 103, 104–05 (N.D.Ill. 1981) articulates the flaw in Fleming's position:

> Hernas points to a series of claimed deficiencies based on Kozicki's failure to meet requirements of pleading and proving slander under Illinois law. While this Court will look to Illinois law on substantive matters relating to the counterclaim, the same is not true as to pleading requirements. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), held that in diversity cases federal courts must apply state substantive law, but retain federal rules for matters of procedure. That same concept operates whenever state law provides the rule of decision, irrespective of the source of federal jurisdiction. *Commissioner of Internal Revenue v. Bosch*, 387 U.S. 456, 461, 87 S.Ct. 1776, 1780, 18 L.Ed.2d 886 (1967). Thus the identical doctrine applies to pendent state claims in a cause of action based on a federal

question. 1A Moore's Federal Practice ¶ 0.305[3] at 3050–51.

> Under the principles developed in *Erie* and its progeny, matters of pleading are governed by the Federal Rules of Civil Procedure regardless of the source of substantive law. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); 5 Wright and Miller, *Federal Practice and Procedure:* Civil § 1204. Kozicki therefore does not have to meet the strict pleading requirements for slander under Illinois law. *Flood v. Margis*, 322 F.Supp. 1086, 1095 (E.D.Wis.1971), *vacated on other grounds*, 461 F.2d 253 (7th Cir.1972).

This Court need not look far to locate the applicable federal pleading standard. Rule 9(b) provides:

> Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Here the Counterclaim clearly meets that easy test.

### Motion To Strike

Fakroddin has moved to strike two of Fleming's affirmative defenses to the Counterclaim. He prevails on each, though for different reasons.

Here is the first affirmative defense:

## I. CONDITIONAL PRIVILEGE

The statements complained of, if found to have been made by counter-defendant and if found to be defamatory, are privileged because made by him, without actual malice, to and concerning the activities of a public official of the County of Kane.

Fakroddin contends that defense raises the "fair comment" privilege, which cannot protect Fleming because his statements show actual malice as a matter of law.

However, Fleming R. Mem. 5 expressly disclaims reliance on Illinois' fair comment privilege. Instead Fleming says his first affirmative defense simply contests the sufficiency of Fakroddin's pleading of malice. Indeed, Fleming Mem. 11–12 treats

that issue as part of his Rule 12(b)(6) motion. This opinion has just considered and rejected that pleading contention, and that ruling defeats the first affirmative defense (as Fleming has explicated it) too.

Fakroddin also attacks what Fleming calls his third "affirmative defense":

### III. PROVOCATION

In mitigation of any damages to which counter-plaintiff may be or may appear to be entitled, by reason of any words found to have been made by counter-defendant, and found to be defamatory, counter-defendant alleges that said statements were made in each case in anger after deliberate provocation by counter-plaintiff.

Were that a true affirmative defense, it would survive dismissal in light of the century-old (but, it seems, still-viable, 33A I.L.P. Slander and Libel § 73) expression of Illinois law in *Miller v. Johnson,* 79 Ill. 58, 60–61 (1875):

Whatever may be the rule elsewhere, it has been definitely settled in this State that, in an action for slander, the anger or passion of defendant at the time of the publication of the slanderous words is no justification, or even mitigation of damages, unless it is shown the passion was provoked by plaintiff, and even then it can only be proven in mitigation of damages.

■ Fakroddin does say Fleming must also allege a retraction of the slander to avail himself of the defense of provocation in mitigation of damages. But Fakroddin points to no Illinois cases imposing such a requirement. And *Knoxville Pub. Co. v. Taylor,* 31 Tenn.App. 368, 215 S.W.2d 27 (1948)—cited by Fakroddin—provides no support for his position. Provocation and retraction constitute separate grounds for mitigation of damages.[5]

■ But all that is really beside the mark for current purposes. Under federal law an affirmative defense admits the allegations in a complaint but nevertheless asserts facts that would *defeat* recovery. See *Bobbitt v. Victorian House, Inc.,* 532 F.Supp. 734, 736–37 (N.D.Ill.1982). As Illinois law makes clear, however, proof of provocation would not *bar* recovery here—it would simply enter into the calculation of damages. Accordingly Fleming's third "affirmative defense" is not a "matter constituting an avoidance" under Rule 8(c), and it is stricken.

### *Affirmative Defense II*

Fleming asserts as his Affirmative Defense II a paragraph captioned "ABSENCE OF MALICE," said to be in mitigation of damages. Fakroddin had filed (unbidden) a "Reply of Counter-Plaintiff," which this Court struck by an April 16 order as unauthorized by Rule 7. Because the "affirmative defense" is also ill-conceived, it too is stricken sua sponte.

■ As this opinion has already said, Fakroddin's public-official status makes malice an essential element of his defamation claim. Absence of that element defeats all recovery, and Counterclaim ¶ 5 properly assumes Fakroddin's burden of proving that element. Hence Fleming's denial of that malice allegation in his Counterclaim Answer ¶ 5 puts the matter at issue. Moreover, the Reply's reaffirmation of Fleming's actual malice simply repeats an allegation already in the Counterclaim—cluttering up the pleadings needlessly.

What that posture of the pleadings demonstrates is that so-called Affirmative Defense II is likewise inaccurately labeled, for it too does not accept the *truth* of the Counterclaim's allegations but explain why—even so—no liability exists. *Bobbitt,*

---

5. Fakroddin solicits this Court to adopt a more "modern" view. But this Court must follow established Illinois law on the provocation defense. As this Court said in *Zick v. Verson Allsteel Press Co.,* 623 F.Supp. 927, 930 (N.D.Ill. 1985) (footnote omitted):

Just as in diversity cases, federal courts do not participate in the evolution of state law. In any event, Fakroddin has come up with no "modern" authority to support his position.

532 F.Supp. at 736. This Court strikes Affirmative Defense II sua sponte.[6]

### Conclusion

Fleming's motion to dismiss is granted as to the words "gutless bastard" and "black son of a bitch" and denied in all other respects. Fakroddin's motion is granted in its entirety, and Fleming's first and third affirmative defenses are stricken. Fleming's second affirmative defense is stricken sua sponte.[7]

---

**6.** It is also puzzling how, if malice *were* absent, damages would merely be mitigated rather than lost entirely under *New York Times*. That flaw in the now-stricken pleading need not further detain the litigants or this Court.

**7.** Perhaps a word is in order as to the extended submissions by the litigants, in which neither counsel is willing to let the other have the last word. After the last of the memoranda on the motions had been filed (providing more than the usual complement of briefs), Fleming's counsel wrote a letter to Fakroddin's lawyer objecting to part of that last filing—and saw fit to send this Court a copy of the letter. Nothing loath, Fakroddin's counsel responded—again with a copy sent here. No one, of course, asked whether this Court wanted to join counsels' pen-pal club. It doesn't.