LITTLE STORES et al. v. ISENBERG.—172 S. W. (2d) 13.

Eastern Section. March 12, 1943.

Petition for Certiorari denied by Supreme Court, May 8, 1943.

358

360

Guinn & Mitchell, of Johnson City, for plaintiffs in error.

Vines, Hawkins & Bryant, of Johnson City, for defendant in error.

BURNETT, J. This is an action of tort for slander and false imprisonment. The case was tried to a jury who returned a verdict in favor of the defendant in error and fixed her damages at $100. The defendants below, plaintiffs in error here, have appealed and assigned numerous errors.

On January 31, 1941, Vertie Isenberg, while shopping in defendants' store, purchased a small head of lettuce from one of defendants' clerks and paid the clerk therefor. She then left the store by its Commerce Avenue entrance. Soon after she was out of the store on the sidewalk "someone grabbed me by the arm and I looked around and it was one of the clerks, and he said 'Lady, you didn't pay for your groceries,' and I said 'Yes, I did,' and he said 'No, you didn't, and I said 'Yes, I did and I will show you,' and I opened my purse and couldn't find it just then and we went back in the store." She then

relates that she re-entered the store because the clerk told her to and that she feared not to because he would put her in jail. She says that when the above statements were made to her they were in a loud voice, and that a number of men who were near "got up right around me and looked at me and just scared me to death." She further testifies that the clerk "took hold of my arm" and was right (at) her back in walking back into the store. When back in the store she says the cashier said to the clerk who had brought her back, "I told you she paid me."

Mrs. Isenberg is fifty-two years old, married and the mother of four sons. She lives some ten or twelve miles out from Johnson City. Her husband is a carpenter. It was her habit to come to Johnson City periodically to shop and see a doctor. She had been under a doctor's care for some two or three years at the time of this alleged occurrence. She rode a bus from home to town. By reason of being detained as above outlined she missed her bus and was made nervous. Apparently this excitement aggravated her existing nervous condition and probably made her sick. A number of character witnesses testify as to her good character.

One of the defendants' clerks admits that she paid her bill. A young clerk, floorwalker, did not see her go through the line by the cash register and did not see her with a green wrapper on her purchase and therefore assumed she had not paid for her purchase. He frankly admits speaking to her on the sidewalk. He says though he was very polite and did not speak loud enough for anyone to hear. The following statement is the clerk's version of what happened: "Pardon me, lady, but did you forget to pay for that, and she said no she didn't, so

I came on back in the store in front of her and went on about my work.''

The jury could, and apparently did, accept the plaintiff's statement of the occurrence.

"Slander, as now understood, has been defined as the speaking of base and defamatory words which tend to prejudice another in his reputation, office, trade, business, or means of livelihood.'' 33 Am. Jur., page 39, sec. 3; J. M. James Co. v. Continental Nat. Bank, 105 Tenn. 1, 58 S. W. 261, 51 L. R. A. 255, 80 Am. St. Rep. 857; 36 C. J., page 1146, sec. 4. "Publication, in the law of defamation, is the communication of defamatory matter to a third person. Since the basis of an action for defamation is damages for the injury to character in the opinion of other men, in order to render defamation of any kind actionable, there must be a publication thereof.'' 36 C. J., page 1223, sec. 169.

If the word uttered will naturally and proximately cause injury to one's personal, social, official or business relations of life, malice is presumed and no special damages need be proved; i. e., if the words spoken impute to the person the commission of a crime or subject him to public ridicule, ignominy or disgrace.

"To charge one with having 'taken' a thing, when the charge is made under circumstances which show an intent to charge larceny, is also actionable.'' 33 Am. Jur., page 56, sec. 31.

The jury in the instant case had the right to so construe the language used.

The plaintiffs in error contend that the court erred in refusing to direct a verdict in their behalf because there was no proof of publication of the alleged slanderous words.

It is not necessary to produce witnesses who heard the words spoken. If it is shown the words were uttered in a loud voice and near others, the jury may infer the publication. The plaintiff testifies that she was thus accused in a loud voice and that men on the sidewalk gathered around.

■ ''While it has been held that mental suffering is not a necessary consequence of a defamatory publication, the great weight of authority appears to support the view that damages can be recovered for an injury of such character, whenever it can be shown to be the proximate result of the use of words that are actionable per se.'' 33 Am. Jur., page 194, sec. 205.

■ A woman from the rural district, fifty-two years old and under a doctor's treatment, would naturally be made very nervous and worried and caused to suffer mentally by being thus accosted in front of strangers. Her mental suffering alone would warrant a verdict the size of this.

■ The American Law Institute has defined ''false imprisonment'' as follows:

''An act which, directly or indirectly, is a legal cause of a confinement of another within boundaries fixed by the actor for any time, no matter how short in duration, makes the actor liable to the other irrespective of whether harm is caused to any legally protected interest of the other, if the act is intended so to confine the other or a third person, and the other is conscious of the confinement, and the confinement is not consented to by the other, and the confinement is not otherwise privileged.'' Restatement, Torts, Vol. 1, page 66, sec. 35.

■ The essence of this tort is in depriving the plain-

tiff of her liberty without justification. No actual force or threats are necessary. A person has the right of free locomotion, to go and come as they choose, so long as they do not trespass on the rights of others. This lady was taken by the arm and walked back into the store in front of the clerk, could have been the belief of the jury.

In 22 American Jurisprudence, at page 368, sec. 24, it is said:

"A customer or patron who apparently has not paid for what he has received may be detained for a reasonable time to investigate the circumstances, but upon payment of the demand, he has the unqualified right to leave the premises without restraint, so far as the proprietor is concerned, and it is false imprisonment for a private individual to detain one for an unreasonable time, or under unreasonable circumstances, for the purpose of investigating a dispute over the payment of a bill alleged to be owed by the person detained for cash services. False imprisonment of a patron may be found, although there is no interference with his freedom of locomotion, if his honesty and veracity as to having paid are openly challenged by the proprietor, so that his departure before vindication may be interpreted by onlookers as an admission of guilt."

See also Jacques v. Childs Dining Hall Co., 244 Mass. 438, 138 N. E. 843, 26 A. L. R. 1329.

 False imprisonment is a wilful wrong even though the defendant acted in good faith. One causing a wrongful imprisonment is liable for all damages naturally growing therefrom. The amount of damages is ordinarily a question for the jury and their verdict will not be disturbed unless the award is so flagrantly large

as to evince passion, partiality or corruption. In arriving at their verdict the jury may consider "physical suffering, mental suffering and humiliation, loss of time and interruption of business, reasonable and necessary expenses incurred, and injury to reputation." 22 Am. Jur., page 436, sec. 129.

 Both under the slander and false imprisonment charges evidence was offered from which different conclusions might have been drawn. This being true, a jury question was presented, and by the jury verdict all controverted questions of fact have been settled, there being substantial evidence to support the verdict. We do "not weigh evidence in a cause tried to a jury, according to its preponderance," if the evidence relied on is substantial.

 The verdict was general—no separate verdict on the respective counts—and is amply supported under either count. We feel that the false imprisonment charge is the more serious of the two. The acts thereunder were entirely uncalled for. The defendant had a right of reasonable investigation as to whether or not merchandise had been paid for—it might restrain for a reasonable time for such investigation. When the defendant held this woman after being told by the cashier she had paid for her purchase it went beyond all reason. The evidence on this question is not controverted. As to these questions and the reasonableness thereof was clearly a question for the jury.

We have carefully considered all assignments herein and have concluded they should all be overruled. The charge of the court to the jury was one of the best we have had an opportunity to read and study. It was fair;

clearly and properly enunciated all necessary proposi-
tions of law; the theory of both parties was well stated; it
might well be adopted as a model in this kind of a case.

All assignments of error are overruled and the judg-
ment affirmed. The costs here will be taxed against the
plaintiffs in error and the sureties on their appeal bond.