673 P.2d 984

**Bruce R. CLARK, Plaintiff-Appellant,**

v.

**AIRESEARCH MANUFACTURING COMPANY OF ARIZONA, INC., A DIVISION OF GARRETT CORPORATION, a California corporation, Defendants-Appellees.**

No. 1 CA–CIV 5742.

Court of Appeals of Arizona,
Division 1, Department A.

Nov. 15, 1983.

Robbins & Green, P.A. by Philip A. Robbins and Paul F. Lazarus, Phoenix, for plaintiff-appellant.

Snell & Wilmer by John J. Bouma and Robert J. Gibson, Phoenix, for defendants-appellees.

OPINION

GRANT, Judge.

This is an appeal from an order granting summary judgment in favor of defendants on the grounds that the complaint for defamation and interference with contractual relationships was barred by the applicable statutes of limitations. We must determine whether a cause of action for defamation accrues upon publication rather than discovery and whether a cause of action for interference with a contractual relationship must commence and be prosecuted within two years after it accrues.

The relevant facts are as follows: Appellant Bruce R. Clark [Clark] had been employed by appellee AiResearch Manufacturing Company of Arizona, Inc. [AiResearch] from 1968–1972. After resigning from AiResearch, Clark spent the next few years self-employed in the buying and selling of aircraft parts and surplus equipment. In the course of this business, Clark purchased two aircraft engines in 1973 that had been salvaged from an airplane crash. In 1975 Clark entered into negotiations with a Mr. Kupka to sell the engines to him. During their negotiations, Clark advised Kupka he should check with AiResearch to be certain it would accept the engines for repair. On two separate occasions in 1973 and 1974 when Clark had entered into other negotiations for selling the engines, the potential buyers had turned the deal down, informing

Clark that an AiResearch employee had said AiResearch would not accept the engines for repair since they had been involved in a fatal crash. Kupka told Clark he did not need to check with AiResearch because he planned to send them to AirAsia for repair. After accepting the engines and making a down payment in May, 1976, however, Kupka refused to pay the balance owed Clark for the engines, claiming the repair bill he received was excessive and that the engines were no good.

While suing Kupka for breach of their contract, Clark learned from Kupka's deposition taken on February 28, 1978, that Kupka had talked with AiResearch in November, 1975, about the engines and that AiResearch employee Jim Stone had told Kupka that Clark had been fired from AiResearch for theft. Clark commenced this action against appellee AiResearch on September 12, 1978 for defamation and wrongful interference with Clark's contractual relationships.

AiResearch moved for summary judgment on the basis that all of Clark's claims were barred by the applicable statute of limitations. It had become apparent from Clark's deposition and interrogatory answers that his only claim of defamation was the alleged statements of Stone to Kupka in November, 1975. The business dealings he claimed AiResearch wrongfully interferred with consisted of his 1976 agreement with Kupka and the earlier attempts to sell the engines in 1973 and 1974.[1] The trial court granted the motion for summary judgment, ruling that Clark's claim in defamation was barred by the two year statute of limitations applicable to suits for defamation. Formal judgment for AiResearch against Clark on his complaint was entered.

Clark moved for rehearing or new trial and objected to the form of judgment to point out that the complaint should not have been dismissed in its entirety because the claims for interference with contract had not been considered. Clark argued that the limitations period for wrongful interfer-

ence with contract claims was four years and therefore his claim that AiResearch had caused Kupka to breach his contract with him was not barred. After considering the authorities presented by the parties, the trial court denied the Clark motions, finding the applicable limitations period to be two years and that all claims were therefore barred. Clark has appealed the trial court's determinations that his claims are barred.

We first consider whether Clark's defamation claims were barred by the statute of limitations. Our statute of limitations relating to suits for defamation A.R.S. § 12–541 provides in pertinent part:

There shall be commenced and prosecuted within one year after the cause of action accrues, and not afterward, the following actions:

1. ... for injuries done to the character or reputation of another by libel or slander.

The question presented by this appeal is whether the cause of action accrued and the statute of limitations began to run upon publication of the defamatory statements or not until their publication was discovered or reasonably should have been discovered by Clark. Clearly Clark's action was filed more than two years after the statements he objects to were made and therefore were properly barred unless we find the "rule of discovery" applies. The trial court found that pursuant to *Lim v. Superior Court*, 126 Ariz. 481, 616 P.2d 941 (App.1980), the action accrued upon publication.

It has been generally held that in defamation cases the cause of action accrues and the statute of limitations begins to run on the date of publication of the defamatory material. *See, e.g., Lim v. Superior Court; Campbell v. Jewish Committee for Personal Service,* 125 Cal.App.2d 771, 271 P.2d 185 (1954); 50 Am.Jur.2d, Libel and Slander § 390 (2d ed. 1970). Many cases that have considered whether failure to discover the defamation affects the running of the statute of limitations have held it does

---

1. On appeal appellant appears to have abandoned his claims concerning the 1973 and 1974 contractual negotiations, apparently conceding they are barred by the statute of limitations.

not. *E.g., Wilson v. Retail Credit Co.,* 438 F.2d 1043 (5th Cir.1971); *Brown v. Chicago, Rock Island & Pacific Railroad Co.,* 323 F.2d 420 (8th Cir.1963); *White v. Fawcett Publications,* 324 F.Supp. 403 (W.D.Mo.1970); *Patterson v. Renstrom,* 188 Neb. 78, 195 N.W.2d 193 (1972).

We note that there is a decided modern trend to apply the rule of discovery in a limited type of defamation cases—cases in which the alleged defamatory statements are published under circumstances in which they are likely to be kept secret from the injured party for a considerable time. The Illinois Supreme Court in *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.,* 61 Ill.2d 129, 334 N.E.2d 160 (1975), held that where defamatory reports are made to a credit reporting agency, the rule of discovery applies. Similarly, the Texas Supreme Court in *Kelley v. Rinkle,* 532 S.W.2d 947 (Tex.1976), held the rule of discovery to be applicable where a person's credit reputation is libeled by publication of a defamatory report to a credit agency. In reaching these conclusions, these courts observed that persons defamed by credit reports ordinarily have no reason to suspect the existence of the reports until applying for credit and that in many instances the limitations period would have run before the reports reasonably could have been discovered by the injured parties.

In *Kittinger v. Boeing Co.,* 21 Wash.App. 484, 585 P.2d 812 (1978), the Washington Court of Appeals found the discovery rule to be appropriate for "libel cases which arise out of confidential business memoranda when the plaintiff has no means, in the exercise of reasonable diligence, of discovering the existence of the cause of action." The same result was reached by the California Court of Appeals in *Manguso v. Oceanside Unified School District,* 88 Cal.App.3d 725, 152 Cal.Rptr. 27 (1979), where an allegedly defamatory letter, placed in a school teacher's confidential personnel file, caused her to be unable to obtain employment and was not made known to her until after the limitations period had run. Likewise the Oregon Court of Appeals in *White v. Gurnsey,* 48 Or.App. 931, 618 P.2d 975 (1980),

held that since the initial publication of a confidential memorandum is not of the type that a plaintiff is presumed to know about even with the exercise of reasonable diligence that the rule of discovery should apply.

Each of the courts in the above-mentioned cases considered the policy considerations behind statutes of limitations, to discourage the presentation of stale claims and to encourage diligence in the bringing of actions, and concluded that these considerations were outweighed by the need to preserve the injured party's rights in this limited kind of case in which the defamatory statements were so likely to be kept secret from the plaintiffs. The Arizona courts have applied the discovery rule in situations where the policies behind the statutes of limitations are outweighed by the grave injustice of a literal application of these statutes. In *Sato v. Van Denburgh,* 123 Ariz. 225, 599 P.2d 181 (1979), involving alleged negligence of an accountant, and in *Nielson v. Arizona Title Ins. & Trust Co.,* 15 Ariz.App. 29, 485 P.2d 853 (1971), involving alleged negligence of a title company, the Arizona Supreme Court, and Division 2 of this court, respectively, ruled that the cause of action for the negligence did not accrue until the plaintiff discovered it or reasonably should have discovered it.

In *Lim v. Superior Court* Division 2 of this court cited the general rule that an action for defamation accrues and the statute of limitations begins to run upon publication. Nothing in *Lim* would preclude us from applying the "rule of discovery" in defamation cases if we deal with the question of whether the statute of limitations is tolled prior to the injured party's discovery of the defamation.

■ We believe the rule of discovery should be applied in those situations in which the defamation is published in a manner in which it is peculiarly likely to be concealed from the plaintiff, such as in a confidential memorandum or a credit report. There are no facts in the present case suggesting that the alleged defamatory re-

marks were published in a particularly secretive manner which would make them unlikely to come to the attention of the injured party. We are not persuaded that the rule of discovery should extend to defamatory remarks not made in an inherently secretive or confidential manner. We particularly find no reason to apply the rule of discovery in this case where Clark admitted in his deposition that even before he resigned from AiResearch and continually in the years following, he was led to believe that negative things were being said about him by personnel at AiResearch. That was even part of the reason he gave for resigning in 1972, and yet he did not take legal action until 1978.

■ Clark also argues that a letter he received from AiResearch in 1973 denying that any wrongful conduct had taken place by the company against him amounted to fraudulent concealment which would toll the statute of limitations. After hearing rumors that negative statements were being made about him, Clark in 1973 apparently confronted his former supervisor at AiResearch to learn if anything improper was being said about him. He received the following letter in response dated November 3, 1973:

> After consultation with my staff and legal counsel, I am unable to establish or conclude that any unlawful conduct or civil liability toward yourself has occurred on the part of this company.
>
> If you have specific evidence or further information about any such misconduct please set forth the details in a letter to me in order that I may take immediate remedial steps.

The letter which merely denies Clark's accusation of wrong doing does not constitute fraudulent concealment. *See, e.g., King & King Enterprises v. Champlin Petroleum Co.,* 446 F.Supp. 906 (E.D.Okl.1978). Moreover, it appears from Clark's deposition that the rumors that negative comments were being made about him did not stop after Clark received the letter. Clark merely had never seen any of the negative comments in writing until he read Kupka's deposition in 1978.

For the foregoing reasons, we find no error in the trial court's dismissal of the defamation claims.

■ We also agree with AiResearch that the two year statute of limitations in A.R.S. § 12–542 governs claims for wrongful interference with contract instead of the four-year limitation period in A.R.S. § 12–550 and therefore find that these claims were properly dismissed. These two limitations statutes provide in pertinent part:

> § 12–542. *Injury to person; ... injury to property; ... two year limitation*
>
> ... there shall be commenced and prosecuted within two years after the cause of action accrues, and not afterward, the following actions:
>
> 1. For injuries done to the person of another.
>
> \*   \*   \*   \*   \*   \*
>
> 3. For trespass for injury done to the estate or the property of another.
>
> § 12–550. *General limitation*
>
> Actions other than for recovery of real property for which no limitation is otherwise prescribed shall be brought within four years after the cause of action accrues, and not afterward.

We find no Arizona case law and none has been cited to us stating which statute of limitations governs actions for tortious interference with contract. We are referred to an annotation on the subject. Annot., *What Statute of Limitations Governs Action for Interference With Contract or Other Economic Relations,* 58 A.L.R.3d 1027 (1967). The annotation states that actions for interference with contract are controlled by statutes of limitations relating to torts. *Id.* at 1030. *See also* R. Sack, *Libel Slander, and Related Problems* § IX.11, at 470 (1980). The main split in case decisions is whether these actions are subject to the limitation relating to injuries to property or to the person.

As AiResearch points out, we are not faced with the issue of whether interference with contract is an injury to the per-

**244**

son or to property since injuries to persons and property are governed by the same limitations statute in Arizona, A.R.S. § 12–542. We agree with AiResearch that the general limitation found in A.R.S. § 12–550 has no application since injuries to persons and property are specifically governed by A.R.S. § 12–542 unless governed by a statute that is more specific.

Clark cites *Kiang v. Strycula*, 231 Cal. App.2d 809, 42 Cal.Rptr. 338 (App.1965), in which the California court held its catch-all limitations provision to be applicable to tortious interference with contract instead of its statute relating to injuries to persons and property. We find the California decision inapplicable because of the difference between the California and Arizona statutes of limitations. California's specific statute applicable to injuries to property specifies "real property or tangible personal property." The California court found tortious interference with contract to be an injury to intangible property. Since injuries to intangible property were not covered by the specific statute, the court found them to be controlled by the catch-all statute. By contrast, A.R.S. § 12–542 applies to injuries to "property" without limitation on the kind of property such as real, tangible, personal, and intangible personal property. Resort to the Arizona catch-all statute at A.R.S. § 12–550 is not necessary.

In his reply brief Clark has argued for the first time that the "rule of discovery" should apply to actions for wrongful interference with contractual relations. Questions not raised in the trial court will not be considered on appeal. *J.H. Mulrein Plumbing Supply Co. v. Walsh*, 26 Ariz. 152, 222 P. 1046 (1924); *Cote v. A.J. Bayless Markets, Inc.*, 128 Ariz. 438, 626 P.2d 602 (App.1981). Particularly, issues raised for the first time in a reply brief will be disregarded by the court. *United Bank v. Mesa N.O. Nelson Co.*, 121 Ariz. 438, 590 P.2d 1384 (1979).

The judgment of the trial court is affirmed.

JACOBSON and KLEINSCHMIDT, JJ., concur.