### 1366

Ronald H. MILLER and Jan Miller, Appellants v. FAIRFIELD
COMMUNITIES, INC., Joe Takacs and Bob Albertson, Respondents.
(382 S. E. (2d) 16)

Court of Appeals

*Allan R. Holmes*, of *Gibbs & Holmes*, Charleston, *for appellants.*

*Thomas A. Bright*, and *Thomas H. Keim, Jr.*, both of *Haynsworth, Baldwin, Miles, Johnson, Greaves & Edwards*, Greenville, *for respondents.*

Heard May 17, 1989.

Decided July 3, 1989.

CURETON, Judge:

Appellants Ronald and Jan Miller sued Respondent Fairfield Communities, Inc. and two of its officers Joe Takacs and Bob Albertson (hereafter Fairfield) for wrongful termination of Ronald Miller's employment. The Millers also alleged violations of the Unfair Trade Practices Act. The trial court granted Fairfield's motion for summary judgment and the Millers appeal. We affirm.

Mr. Miller was employed at Fairfield as a golf professional at its resort on Edisto Island. Mrs. Miller worked as a real estate agent for the Lyons Company, a competitor of Fairfield, in the real estate business on Edisto Island. It is undisputed Mr. Miller was an at-will employee.

In July 1986, Bob Albertson, regional manager for Fairfield, and Joe Takacs, Mr. Miller's immediate supervisor, met with Mr. Miller to discuss a perceived conflict of interest. The conflict emanated from the belief by several Fairfield sales people that Mr. Miller was improperly allowing

his wife's customers to utilize the company's resort facilities, primarily the golf course. Mr. Albertson advised Mr. Miller that his wife's employment with the Lyons Company was unacceptable and conditioned Mr. Miller's continued employment with Fairfield on Mrs. Miller resigning from her employment with the Lyons Company. After discussing the situation with his wife, Mr. Miller tendered his resignation to Fairfield.

The Millers' complaint alleges three causes of action: wrongful discharge in violation of public policy; violation of the Unfair Trade Practices Act; and tortious interference with Mrs. Miller's employment contract. The trial court dismissed with prejudice the tortious interference cause of action for failure to state a claim upon which relief may be granted. The Millers have not appealed the dismissal.

In response to Fairfield's motion for summary judgment, the Millers contended the ultimatum given Mr. Miller by Fairfield "would have required [him] to violate the law." They specifically claim Fairfield's demand would have required Mr. Miller to conspire with his wife to end her employment with the Lyons Company in violation of Section 40-57-240, Code of Laws of South Carolina, 1976. They also argued Fairfield's attempts to wrongfully injure a competitor, impair contractual relations, and destroy public interests protected by state criminal laws governing the practice of the real estate profession are classic violations of the Unfair Trade Practices Act.

After reviewing the parties' briefs and considering their oral arguments, the trial court granted Fairfield's motion for summary judgment. The court held the Millers failed to present any evidence Mr. Miller was discharged for refusing to violate the laws of this state. The court further held Fairfield's actions were unconnected with trade or commerce and did not as a matter of law fall within the scope of the Unfair Trade Practices Act. We agree.

I.

"Where the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy, a cause of action in tort for wrongful discharge arises." *Ludwick v. This Minute of South Caro-*

*lina, Inc.*, 287 S. C. 219, 225, 337 S. E. (2d) 213, 216 (1985). The public policy exception is applicable where an employer requires an at-will employee to violate the law as a condition of retaining his employment. *Id.*

Mr. Miller argues Fairfield's demands would require his wife to violate provisions of Section 40-57-170 of the Code which violations he claims are punishable as a misdemeanor under Section 40-57-240. The Millers view Fairfield's demand as necessitating Mrs. Miller transferring her listings to another brokerage firm without the consent of the Lyons Company. They argue such a transfer would violate Section 40-57-170(7). They also argue Mrs. Miller's willful failure to honor her promises to property owners that she would personally market their real estate[1] would violate Section 40-57-170(4) which prohibits "[a]ny conduct in a real estate transaction which demonstrates bad faith, dishonesty, untrustworthiness or incompetency in such a manner as to endanger the interest of the public."

The Millers refer to Section 40-57-240 as providing criminal penalties for violation of the provisions of Section 40-57-170. They no doubt refer to the old version of Section 40-57-240. Effective March 28, 1986, Section 40-57-240 was amended to provide penalties only for brokers, salesmen, counsellors, etc., who fail to renew or register their licenses. Act No. 353, 1986 *S. C. Acts* 2552. The amendment deleted a provision relative to penalties for violation of other provisions of Chapter 57 and the punishment therefor. As we interpret Section 40-57-170, as amended, while a violation of the prohibitions of the Section subjects a person to certain administrative sanctions such violation does not subject one to criminal penalties.

The Millers also argue that to subject an employee to civil penalties or sanctions as a condition of his continued employment is contrary to a clear mandate of public policy. From the discussion in *Ludwick* it seems clear the Supreme Court did not consider public policy outside the

---

[1] The Millers state in their response to Fairfield's motion for summary judgment: "It is the uncontradicted testimony of . . . Jan Miller . . . that she induced property owners to list their property with the Lyons Company by expressly assuring each of them that she . . . would perform the duties of the listing agent."

sphere of criminal sanctions. The Supreme Court may want to consider this question and pass upon it. We choose not to expand the public policy exception to include the case before us. This is in keeping with the emerging trend of both state and federal courts. *See Adler v. American Standard Corp.*, 830 F. (2d) 1303 (4th Cir. 1987). In *Adler* the court was asked to interpret Maryland's employment-at-will exception. In refusing to expand the exception the court noted: "[l]imitation of the claim for abusive discharge to situations involving the actual refusal to engage in illegal activity, or the intention to fulfill a statutorily prescribed duty, ties abusive discharge claims down to a manageable and clear standard." *Id.* at 1307.

Additionally, we find no fact question exists regarding whether Mrs. Miller's resignation from the Lyons Company would violate Section 40-57-170. The Millers claim her resignation would require her to either transfer her listings to another real estate company, in which event she would violate Section 40-57-170(7), or require her to abandon her responsibilities to the sellers who listed their properties with her thereby violating Section 40-57-170(4). We disagree. The listing agreements are between the Lyons Company and the sellers, not between Mrs. Miller and the sellers.[2] While Mrs. Miller may have induced the sellers to list their properties with the Lyons Company on the promise she would personally service the listing agreements, we refuse to hold that to require her to violate these confidences contravenes a clear mandate of public policy.[3]

Mr. Miller next contends Fairfield required him, as a condition of his continued employment, to tortiously interfere with the contractual relationships existing between

---

[2] Section 40-57-170(7) prohibits a real estate salesman from representing a real estate broker other than his employer without the express knowledge and consent of the employer.

[3] We do not know whether this listing was included in a consolidated multiple listing service or not. It is common knowledge that in the real estate profession a sales agent of one real estate company often sells property listed by another real estate company. In fact, one of the reasons for listing property in a multiple listing service is to enable a larger exposure to sales agents from other companies who hopefully will sell the property. We are aware of no reason why Mrs. Miller could not have sold these properties as an agent of another real estate company.

Mrs. Miller and her customers which condition violates a clear mandate of public policy. Again, we disagree. As discussed earlier, the listing agreements were with the Lyons Company, not Mrs. Miller, and the sellers were customers of the Lyons Company. Thus, there were no contracts between Mrs. Miller and her so-called customers with which to interfere.

The Millers also assert Fairfield required Mr. Miller as a condition of his continued employment to (1) conspire with it to extract from Mrs. Miller a covenant not to compete, (2) conspire to monopolize real estate services on Edisto Island, and (3) engage in practices having a tendency to weaken the family. None of these contentions were presented to the trial court. A party asserting a point on appeal must first address the point to the trial court for its consideration. *Austin v. Conway Hospital, Inc.*, 292 S. C. 334, 356 S. E. (2d) 153 (Ct. App. 1987). Additionally, we conclude as a matter of law these assertions are factually unsupported.

## II.

The Millers next contend Fairfield's attempts to coerce them into committing the acts discussed above violate the provisions of the South Carolina Unfair Trade Practices Act. The trial court found that because the acts complained of took place in an employer-employee relationship the Unfair Trade Practices Act (U.T.P.A.) does not apply.

We have found no South Carolina cases discussing the applicability of the U.T.P.A. to an employer-employee relationship. However, several states, including North Carolina, have held employer-employee relationships fall outside the scope of the U.T.P.A. statutes. *See Buie v. Daniel Inter. Corp.*, 56 N. C. App. 445, 289 S. E. (2d) 118 (1982), *rev. denied*, 305 N. C. 759, 292 S. E. (2d) 574 (1982) (N. C. Court of Appeals held the employer-employee relationship does not fall within the intended scope of North Carolina's U.T.P.A. because employment practices fall within the purview of other statutes adopted for that express purpose). We agree with the trial court that to the extent the Millers' complaint is an employer-employee relations matter it is not covered by the Unfair Trade Practices Act.

The Millers conceded at oral argument that an employment relationship matter is not *per se* the basis for an U.T.P.A. complaint because there is insufficient public interest in a private contractual relationship between two parties. They argue, however, the public interest involved here is the fair and competitive marketing of real estate on Edisto Island. They further argue a reasonable inference can be drawn that Fairfield intended to injure the Lyons Company from the fact that another Fairfield employee was fired because his wife too worked for a competitor.

The evidence before us does not suggest Fairfield's motive in demanding Mrs. Miller resign her employment was for the purpose of injuring the Lyons Company.[4] Fairfield's witness testified the company's only motive in requiring Mrs. Miller to resign her employment was to eliminate a perceived conflict of interest. Moreover, even Mrs. Miller testified the firing of the other employee was vastly different from the instant situation in that both the employee who was fired and his wife were in real estate sales with competing companies. She stated she and her husband both could see how that would have been a conflict of interest.

Additionally, the Millers have not demonstrated that the acts complained of have the potential for repetition. Since the firing of the other employee was apparently justified under the circumstances, Mr. Miller's alleged constructive firing was simply an isolated incident.

Fairfield has raised several additional sustaining grounds for affirmance of the trial court's order. Because we sustain the granting of summary judgment on the basis above discussed, we need not reach the merits of the additional sustaining grounds. Accordingly, the order of the trial court is

Affirmed.

GARDNER and GOOLSBY, JJ., concur.

---

[4] We also note that to the extent the practices of Fairfield are subject to the regulatory control of the S. C. Real Estate Commission they are exempt from sanction under the Unfair Trade Practices Act. Section 39-5-40, Code of Laws of South Carolina as amended; *Scott v. Mid-Carolina Homes, Inc.*, 293 S. C. 191, 359 S. E. (2d) 291 (Ct. App. 1987) (sale of mobile homes is exempt from U.T.P.A. because it is subject to regulatory control and imposition of penalties by the Manufactured Housing Board).