QUALITY AUTO PARTS CO., INC.,
Plaintiff (non-appealing party),

v.

BLUFF CITY BUICK CO., INC., Milton
Schaeffer, and Joseph Schaeffer,
Counter–Defendants/Appellants,

v.

Whitson KIMBROW, Counter–
Plaintiff/Appellee.

Supreme Court of Tennessee,
at Jackson.

March 7, 1994.

Rehearing Denied May 16, 1994.

Gail O. Mathes, Memphis, for appellants.

Joseph Michael Cook, Memphis (Jim Waide, of counsel), Tupelo, MS, for appellee.

## OPINION

ANDERSON, Justice.

In this appeal, we are asked to determine whether the discovery rule applies to the six-month statute of limitations for slander, and whether the Tennessee Consumer Protection Act is applicable. We also consider whether a claim has been stated for the tort of intentional interference with prospective economic advantage. For the reasons stated below, we conclude that the discovery rule does not apply to the slander statute of limitations because of the nature of slander and the explicit language of the statute. We also agree that the Tennessee Consumer Protection Act is not applicable and that a claim has not been stated for the tort of intentional interference with prospective economic advantage. Accordingly, we do not address the question of whether the tort should be recognized in this case.

## BACKGROUND

This action began when Quality Auto Parts Co., Inc. ("Quality"), filed suit against Bluff City Buick Company, Inc. ("Bluff City") to collect an unpaid account for auto parts. Bluff City responded by filing a third party action against their own employee, Whitson Kimbrow, Jr., and Quality's president, James M. Williams. The action alleged that Williams created "phony" parts invoices from Quality, that were paid by Kimbrow, as parts manager for Bluff City, with Williams and Kimbrow splitting the profits from the conspiracy.

Kimbrow denied the charges and filed a counterclaim for slander, alleging that representatives of Bluff City made defamatory statements about him, including calling him a "thief" and saying that he was "stealing from the company." Kimbrow learned of one statement three and one-half months after it was made, another approximately five months after it was made, and the rest within ten months. All agree the slander action was filed more than six months after "the words were uttered."

Kimbrow's counter-claim also maintained that the statements were a "disparaging of his services or business" and, therefore, vio-

lated the Tennessee Consumer Protection Act, Tenn.Code Ann. § 47–18–104(b)(8) (1988 & Supp.1993). In addition, Kimbrow contended that the statements were made with the deliberate intent to interfere with his future business as a parts manager, and therefore, constituted the common-law tort of intentional interference with prospective business relations.

Bluff City filed a motion to dismiss Kimbrow's counter-claim, and the trial court dismissed the counter-claim with prejudice. The trial court concluded that the slander action was time-barred by the expiration of the six-month statute of limitations;[1] that the consumer protection statute does not apply to an employer/employee relationship; and that Tennessee does not recognize the tort of intentional interference with prospective business relations.

Kimbrow appealed. The Court of Appeals affirmed the trial court's decision dismissing the consumer protection claim and the tort of intentional interference with prospective business relations, but held the slander claim was not time-barred. The Court of Appeals concluded that the six-month statute of limitations did not begin to run until Kimbrow discovered the injury.

■ Because the trial court has held Kimbrow's complaint legally insufficient by its failure to state a claim, we will take as true all well-pleaded, material factual allegations, and we will construe the complaint liberally in favor of the plaintiff in our discussion of the issues which follows. *Dobbs v. Guenther*, 846 S.W.2d 270 (Tenn.App.1992).

### STATUTE OF LIMITATIONS

We first consider whether the discovery rule applies to the six month statute of limitations for slander. Essential to our analysis is an examination of the origin and purpose of the discovery rule in Tennessee, as well as the history and development of the law of defamation, specifically slander.

■ The discovery rule was first announced in *Teeters v. Currey*, 518 S.W.2d 512, 515 (Tenn.1974), a medical malpractice case. It provides that the statute of limitations begins to run when the injury is discovered, or in the exercise of reasonable care and diligence, the injury should have been discovered. The rule responds to the unfairness of "requiring that he [a plaintiff] sue to vindicate a non-existent wrong, at a time when injury is unknown and unknowable." *Id.* at 515. Since its announcement in *Teeters*, the discovery rule has been applied to various tort actions including products liability, legal malpractice, and dental malpractice actions. *Chambers v. Dillow*, 713 S.W.2d 896 (Tenn.1986); *Foster v. Harris*, 633 S.W.2d 304 (Tenn.1982); *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487 (Tenn. 1975).

■ In contrast to the rationale for the discovery rule are the policy reasons for the development of statutes of limitations to ensure fairness to the defendant by preventing undue delay in bringing suits on claims, and by preserving evidence so that facts are not obscured by the lapse of time or the defective memory or death of a witness. *Potts v. Celotex Corp.*, 796 S.W.2d 678, 681 (Tenn. 1990); *Teeters*, 518 S.W.2d at 515; *see generally Developments in the Law: Statutes of Limitations*, 63 Harv.L.Rev. 1176, 1185 (1950). When determining whether to apply the discovery rule, this court considers the specific statutory language at issue, and balances the policies furthered by application of the discovery rule against the legitimate policies upon which statutes of limitations are based. *Potts*, 796 S.W.2d at 684.

■ Also necessary to our decision is an understanding of the development of the law of defamation, which includes both slander and libel. A libel action involves written defamation and a slander action involves spoken defamation. The basis for an action for defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the person's character and reputation. *Little Stores v. Isenberg*, 26 Tenn.App. 357, 172 S.W.2d 13, 16 (1943). Historically, however, a distinction has been drawn between the two types of defamation.

---

1. Tenn.Code Ann. § 28–3–103 (1980).

Libel was criminal in its origin ... while slander was never criminal in itself, and could become so only when the words amounted to some other offense, such as sedition, blasphemy, or a breach of the peace. When the two at last met in the common law courts, they tended to become separate rather than united; and since libel was already established as the greater wrong, greater responsibility attached to it.

*Prosser and Keeton on Torts* § 112 at 785 (West 5th ed. 1984 & Supp.1988) (hereinafter referred to as "Prosser, § _ at __"). In Tennessee, the distinction establishing libel as the greater wrong was said to be "founded in the deliberate malignity displayed by reducing the offensive matter to writing." *Williams v. Karnes*, 23 Tenn. 9, 11 (1843).

The historical distinction discussed above is evident in Tennessee's current statutes of limitations on slander and libel. Actions for slander must "be commenced within six (6) months after the words are uttered," Tenn. Code Ann. § 28–3–103 (1980); while, in contrast, a plaintiff bringing an action for libel has one year from the time "the cause of action accrued." Tenn.Code Ann. § 28–3–104 (1980 and Supp.1993). The difference in the time limitations implicitly recognizes the degree of wrong between the two torts.

■ Other jurisdictions generally hold that a cause of action for defamation, whether libel or slander, accrues and the statute of limitations begins to run on the date of publication of the defamatory material. Publication is a term of art meaning the communication of defamatory matter to a third person. In the case of slander, "publication" occurs when the defamatory matter is spoken. *Little Stores*, 172 S.W.2d at 16; *see also Applewhite v. Memphis State University*, 495 S.W.2d 190, 192–93 (Tenn.1973). Tennessee has codified that general rule in the slander statute of limitations by explicitly providing that the time period begins to run when the slanderous words are uttered.

The great majority of courts in other jurisdictions have held that the discovery rule does not alter the general rule that the time period begins to run when the words are uttered.[2] Moreover, in most cases, the courts went even further and declined to apply the discovery rule to "accrual" language in the statute of limitations for slander, as opposed to the more explicit language in the Tennessee slander statute.[3]

■ We conclude that the rationale for declining to apply the discovery rule to defamation statutes of limitations is persuasive.

**2.** *Gordon v. Fredle*, 206 N.C. 734, 175 S.E. 126 (1934); *Lathrop v. McBride*, 209 Neb. 351, 307 N.W.2d 804, 806 (1981); *Lawrence v. Bauer Pub. & Printing Ltd.*, 78 N.J. 371, 396 A.2d 569, 571 (1979) (Pashman, J., concurring); *Mikaelian v. Drug Abuse Unit*, 501 A.2d 721, 724–25 (R.I. 1985); *Clark v. Airesearch Mfg. Co. of Ariz. Inc.*, 138 Ariz. 240, 673 P.2d 984 (App.1983); *Withall v. Capitol Federal Sav. of America*, 155 Ill.App.3d 537, 108 Ill.Dec. 202, 508 N.E.2d 363, 367 (1 Dist.1987); *McGovern v. Cargill, Inc.*, 463 N.W.2d 556 (Minn.App.1990); *Karam v. First American Bank of New York*, 190 A.D.2d 1017, 593 N.Y.S.2d 640, 642 (1993); *Rand v. New York Times Co.*, 75 A.D.2d 417, 430 N.Y.S.2d 271, 275 (1980); *Lyons v. Farmers Ins. Group of Companies*, 67 Ohio App.3d 448, 587 N.E.2d 362, 364 (3 Dist.1990); *Workman v. Rajneesh Foundation Intern.*, 84 Or.App. 226, 733 P.2d 908, 911 (1987); *Brown v. American Broadcasting Co., Inc.*, 704 F.2d 1296 (4th Cir.1983) (applying Virginia law); *Lashlee v. Sumner*, 570 F.2d 107, 108 (6th Cir.1978) (applying Kentucky law); *Wilson v. Retail Credit Co.*, 438 F.2d 1043 (5th Cir.1971) (applying Mississippi law); *Morgan v. Hustler Magazine, Inc.*, 653 F.Supp. 711 (N.D.Ohio 1987); *L. Cohen & Co., Inc. v. Dun & Bradstreet,*

*Inc.*, 629 F.Supp. 1425 (D.Conn.1986); *Rinsley v. Brandt*, 446 F.Supp. 850, 852 (D.Kan.1977); *Heller v. Smither*, 437 F.Supp. 1 (M.D.Tenn.1977) (affirmed without opinion 578 F.2d 1380 (6th Cir.1978); *see generally* Annotation, *Limitation of Actions: Time of Discovery of Defamation as Determining Accrual of Action*, 35 A.L.R.4th 1002 (1985); *but see Hoke v. Paul*, 65 Haw. 478, 653 P.2d 1155 (1982).

**3.** We also note that the discovery rule has been applied in a limited type of defamation case— cases in which the alleged defamatory statements are published under circumstances in which they are likely to be kept secret, i.e. reports to credit bureaus and letters placed in employment personnel files. *See e.g., Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill.2d 129, 334 N.E.2d 160 (1975); *Kittinger v. Boeing Co.*, 21 Wash.App. 484, 585 P.2d 812 (1978); *Manguso v. Oceanside Unified School District*, 88 Cal.App.3d 725, 152 Cal.Rptr. 27 (4th Dist.1979); *White v. Gurnsey*, 48 Or.App. 931, 618 P.2d 975 (1980); *Clark v. Airesearch Mfg. Co. of Ariz., Inc.*, 138 Ariz. 240, 673 P.2d 984 (App. 1983).

Typical situations in which the discovery rule has been applied involved distinct and usually physical injuries developing long after the defendant's negligent conduct occurred, and after the statute of limitations expired. In contrast, the injury to character and reputation upon which a slander action is based develops and is complete at the moment the slanderous words are uttered. Moreover, the policies upon which statutes of limitations are based, i.e., preventing stale claims and preserving evidence, are especially applicable to slander actions because of the intangible nature of the evidence, spoken words, and of the injury itself, damage to character and reputation. *Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex.1976). Finally, as the federal district court recognized in *Heller v. Smither, supra*, the language of Tennessee's slander statute of limitations sets forth "a positive and distinct event that triggers the running of the limitations period—the utterance of the alleged defamatory words." *Id.* at 5.

Based on the foregoing reasoning, we conclude that the discovery rule does not apply to Tennessee's slander statute of limitations; and accordingly, Kimbrow's claim for slander is time barred.

### CONSUMER PROTECTION CLAIM

 Next, Kimbrow contends that the statements made by the agents and employees of Bluff City violate the Tennessee Consumer Protection Act, despite the fact that the statements arose in the employer-employee context. Kimbrow says that the false statements alleged in his complaint disparaged his services to such an extent that he has since been unable to get a job as a parts manager. In support of his claim, Kimbrow relies on Tenn.Code Ann. § 47–18–104 (1988 & Supp.1993), which provides in pertinent part:

**Unfair or deceptive acts prohibited.**—(a) Unfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices and are Class B misdemeanors.

(b) Without limiting the scope of subsection (a), the following unfair or deceptive acts or practices affecting the conduct of

any trade or commerce are declared to be unlawful and in violation of this part:

. . . .

(8) Disparaging the goods, services or business of another by false or misleading representations of fact.

We note that other state courts have concluded, as did the trial court and the Court of Appeals, that consumer protection laws do not apply to disputes arising in the context of employer-employee relationships. *Manning v. Zuckerman*, 388 Mass. 8, 444 N.E.2d 1262 (1983); *Miller v. Fairfield Communities, Inc.*, 299 S.C. 23, 382 S.E.2d 16 (App.1989); *Buie v. Daniel Intern. Corp.*, 56 N.C.App. 445, 289 S.E.2d 118 (1982). We, however, find it unnecessary to reach that issue in this case. Assuming for the sake of argument that the defendants made the false statements alleged in the complaint, the statements did not criticize or disparage the quality of Kimbrow's services as a parts manager, but reflected only upon his integrity. As such, they would not support a claim under Tenn.Code Ann. § 47–18–104(b)(8), assuming it applied. *Crinkley v. Dow Jones and Co.*, 67 Ill.App.3d 869, 24 Ill.Dec. 573, 578–79, 385 N.E.2d 714, 719–20 (1 Dist.1978).

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

Lastly, we consider Kimbrow's contention that the Court of Appeals erred by concluding that Tennessee does not recognize the tort of intentional interference with prospective economic advantage.

 Tennessee undoubtedly does recognize both a statutory and common law action for unlawful inducement of a breach of contract. Tenn.Code Ann. § 47–50–109 (1988 & Supp.1993); *Polk & Sullivan, Inc. v. United Cities Gas Co.*, 783 S.W.2d 538, 543 (Tenn. 1989). In order to establish such a cause of action, a plaintiff must prove that there was a legal contract, of which the wrongdoer was aware, that the wrongdoer maliciously intended to induce a breach, and that as a proximate result of the wrongdoer's actions, a breach occurred that resulted in damages to the plaintiff. *Id.*

In contrast, Tennessee courts have never expressly recognized nor rejected[4] the distinct tort of intentional interference with prospective economic advantage although a majority of other jurisdictions have explicitly accepted it as an independent tort. *See generally,* 5 A.L.R.4th 9 (1981); 6 A.L.R.4th 195 (1981); *Prosser,* § 130; 45 Am.Jur.2d, *Interference* § 49 (1969 & Supp.1993).

Most jurisdictions and commentators agree the tort is composed of the following elements: (1) the existence of a business relationship or expectancy (an existing contract is not required); (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional act of interference; (4) proof that the interference caused the harm sustained; and (5) damage to the plaintiff. *Id.,* 5 A.L.R.4th at § 2[a], p. 16; *see also Crandall Corp. v. Navistar Intern.,* 302 S.C. 265, 395 S.E.2d 179 (1990); *Commodore v. University Mechanical Contr.,* 120 Wash.2d 120, 839 P.2d 314 (1992).

Development of the tort has been parallel to the tort of interference with existing contract. Consequently, most protected "expectancies" have included only fairly specific and certain future contractual relations. Also required has been the ability to ascertain both the lost value and the likelihood that the plaintiff would have received it if the defendant had not interfered. Examples include the prospect of obtaining employment or employees, and the opportunity of obtaining customers. *Prosser,* § 130, at 1006.

In the current action, Kimbrow acknowledges that Tennessee has never expressly recognized the tort of intentional interference with prospective economic advantage, but argues that the tort was implicitly recognized by this Court in the early case of *Hutton v. Watters,* 132 Tenn. 527, 179 S.W. 134, 135 (1915).

In *Hutton,* the plaintiff owned a boarding house whose tenants were students at a near- by school. Angered by the plaintiff's refusal to dismiss a boarder with whom Watters, the school president, had quarrelled, Watters threatened to deprive the students boarding with the plaintiff of certain school benefits unless they left her house. Watters also interfered with the plaintiff's access to potential boarders by delivering similar threats to new arrivals at the train station. The trial court dismissed the case, but the *Hutton* court reversed, holding the allegations stated a claim upon which relief could be granted. No distinction was drawn by the *Hutton* court between those boarders who had an existing contractual relationship and those prospective boarders who never sought accommodations with the plaintiff due to the defendant's threats. Accordingly, it is not clear that the tort of intentional interference with prospective economic advantage was the claim recognized in *Hutton.*

It is clear, however, that the resolution of this case does not require that we recognize or reject the tort of intentional interference with prospective economic advantage. There is nothing in the record to indicate that the counter-plaintiff Kimbrow had sought and been refused employment with any specific person or company. Nor is there any claim that Quality *knew* of any such prospective relationship of employment between Kimbrow and a particular individual or entity. The record contains only Kimbrow's assertion that he has been unable to obtain employment in the Memphis area because of Quality's interference. As Bluff City points out, even if this Court recognized the tort at this time, Kimbrow's claim must fail because his complaint does not allege two essential elements of the tort—(1) the existence of a specific prospective employment relationship and (2) knowledge by Quality of such a relationship. *See Meehan v. Amax Oil & Gas, Inc.,* 796 F.Supp. 461, 467 (D.Colo.1992).

---

4. A number of federal courts have assumed that Tennessee would follow the majority of jurisdictions in recognizing the tort. Relief was not granted in any of those cases, however, because the facts did not establish the necessary elements. *Warde v. Kaiser,* 887 F.2d 97, 103 n. 1 (6th Cir.1989); *Unijax Inc. v. Champion Intern., Inc.,* 683 F.2d 678, 687 n. 16 (2nd Cir.1982); *Acuff–Rose Music v. Campbell,* 754 F.Supp. 1150, 1160 (M.D.Tenn.1991); *Cesnik v. Chrysler Corp.,* 490 F.Supp. 859, 870–71 (M.D.Tenn.1980); *but see Chilton Air Cooled Engines v. Omark Indus.,* 721 F.Supp. 151, 156 (M.D.Tenn.1988). *Cf. Taylor v. Nashville Banner Pub. Co.,* 573 S.W.2d 476, 485 (Tenn.App.1978).

We conclude that the question of whether Tennessee recognizes the tort of intentional interference with prospective economic advantage should be postponed to another day when we are squarely presented with a case in which all of the elements of the tort have been alleged or otherwise established. Accordingly, the Court of Appeals' judgment dismissing Kimbrow's claim is affirmed upon the separate grounds stated.

### CONCLUSION

For the reasons stated above, we affirm the Court of Appeals' judgment dismissing Kimbrow's claims for violation of the Tennessee Consumer Protection Act and the tort of intentional interference with prospective economic advantage. The Court of Appeals' judgment applying the discovery rule to the slander statute of limitations is reversed. Costs of this appeal are taxed to the counter-plaintiff, Whitson Kimbrow.

REID, C.J., and DROWOTA and O'BRIEN, JJ., concur.

DAUGHTREY, J., not participating.

### ORDER ON PETITION FOR REHEARING

PER CURIAM.

A petition for rehearing has been filed in this cause by the counter-plaintiff/appellee, Whitson Kimbrow, which the Court has considered and concludes should be denied.

It is so ORDERED.