# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
February 3, 2014 Session

# CHARLES NARDONE v. LOUIS A. CARTWRIGHT, JR., ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-664-11      Dale Workman, Judge**

---

**No. E2013-00522-COA-R3-CV-FILED-MARCH 17, 2014**

---

Charles Nardone ("Plaintiff") sued Louis A. Cartwright, Jr. and Cartwright Communication Technology, Inc. ("CCT") alleging, among other things, slander and libel. During trial, defendants moved for a directed verdict, which the Trial Court granted by order entered December 6, 2012. Plaintiff appeals the dismissal of his claim for libel. We find and hold that Plaintiff failed to prove libel, and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

Eric C. Vinsant, Knoxville, Tennessee, for the appellant, Charles Nardone.

R. Deno Cole, Knoxville, Tennessee, for the appellees, Louis A. Cartwright, Jr. and Cartwright Communication Technology, Inc.

# OPINION

## Background

In August of 2008, Plaintiff accepted employment with CCT, a company which "sells, leases, installs, and repairs communication devices for 911 centers, ambulances, polices [sic] vehicles, rescue squads, etc."[1] During Plaintiff's employment with CCT, Plaintiff was required to wear uniforms provided by an outside uniform company. A contract between CCT and the uniform company provided that the uniforms supplied to CCT's employees remained the property of the uniform company.

Plaintiff tendered to CCT a written resignation of his employment on March 24, 2011. Plaintiff requested his final paycheck and was told he would not receive the paycheck until it was prepared on the Monday following the end of the pay period, which would have been Monday, March 28, 2011. Plaintiff went to CCT's offices on Monday, March 28, 2011, and Plaintiff was informed by the office manager that he would not receive his paycheck until he turned in his uniforms.

On March 28, 2011 at 7:33 p.m. Plaintiff sent Mr. Cartwright an email requesting his final paycheck and amounts that had been withheld from his paychecks for uniform deductions. On March 29, 2011 Plaintiff went to CCT's offices to exchange his uniforms for his paycheck and was told by the office manager that Mr. Cartwright had Plaintiff's paycheck and that Mr. Cartwright was not in the office. Plaintiff planned to return to CCT's offices at a later time to exchange the uniforms for his paycheck.

On March 29, 2011, CCT's office manager contacted the Tennessee Department of Labor and was told that CCT had to issue Plaintiff his final paycheck within 21 days of Plaintiff's last day of employment, and that CCT could not withhold the paycheck pending Plaintiff's return of the uniforms. The office manager was advised to contact the police to seek assistance in getting Plaintiff to return the uniforms. CCT's office manager informed Mr. Cartwright about her conversation with the Tennessee Department of Labor employee. Mr. Cartwright then called the Knox County Sheriff's Office ("Sheriff's Office") on March 30, 2011 to seek assistance in getting the uniforms.

Cathy Norris, an officer with the Sheriff's Office, took Mr. Cartwright's telephone call. Officer Norris then keyed in the data to create a report ("the Report"). The

---

[1]The record on appeal does not contain a transcript, but does contain a Statement of the Evidence approved by the Trial Court. The facts discussed in this Opinion are taken from the Statement of the Evidence.

evidence shows that people who call the Sheriff's Office are not made aware that reports are made electronically or in writing and that these reports may be accessible to the public. The Report created states on page one in the section labeled "Primary Offense" that the offense was "THEFT FROM BUSINESS BY EMPLOYEE." The language "THEFT FROM BUSINESS BY EMPLOYEE" was not language used by Mr. Cartwright, but was based upon a code selected by Officer Norris.

After the Report was keyed in, Detective Shipley was assigned to the case. Detective Shipley contacted Plaintiff on March 31, 2011 and requested Plaintiff to return the uniforms to CCT. Plaintiff agreed to do so. Plaintiff admitted that Detective Shipley never told him he was being arrested or prosecuted or that a criminal warrant had been sworn out against him by anyone. After speaking with Plaintiff, Detective Shipley spoke with Mr. Cartwright on March 31, 2011 and told him that Plaintiff intended to return the uniforms.

On April 1, 2011 Plaintiff's attorney returned the uniforms to the uniform company, rather than to CCT. Mr. Cartwright called the Sheriff's Office on April 1, 2011 to report that Plaintiff had returned the uniforms to CCT's satisfaction. Detective Shipley updated the Report on April 1, 2011 to reflect that the uniforms had been returned, at which point Detective Shipley considered the case resolved and closed.

Detective Shipley testified at trial that Mr. Cartwright never requested that Plaintiff be prosecuted and never specifically stated that Plaintiff was guilty of theft. The narrative contained in the Report contains no indication that Mr. Cartwright accused Plaintiff of any crime. Plaintiff admitted that nothing in the narrative of the Report was untrue. No proof was produced that Mr. Cartwright knew that an electronic or written report was being made when he spoke with the officers from the Sheriff's Office. There was no proof presented at trial that the copy of the Report entered as an exhibit at trial, which was obtained by Plaintiff, represented a copy of what another member of the public could obtain if seeking a report from the Sheriff's Office.

Plaintiff testified that he has maintained his employment with his current employer since he left CCT's employ and further testified that his current income is greater than when he worked for CCT. Plaintiff admitted that he has sought no psychological or medical treatment as a result of the defendants' actions. Plaintiff offered no proof at trial that his reputation was damaged. Plaintiff admitted that he was not a member of any church, civic organization, non-profit board, or a volunteer for any organization, and admitted that he could not name one person other than his wife and CCT's employees who even were aware of the Report. Plaintiff admitted that he has a good marriage and that his reputation with his wife was not harmed by the Report. Plaintiff could not name one person who thought less of him as a result of this case.

During trial, defendants moved for a directed verdict, which the Trial Court granted by order entered December 6, 2012. In its December 6, 2012 Order and Final Judgment, the Trial Court specifically found and held, *inter alia*, "there is no material evidence in the record to prove a case of libel and any evidence to prove a case for slander would be barred by the six (6) month statute of limitations." Plaintiff appeals to this Court the dismissal of his claim for libel.

## **Discussion**

Although not stated exactly as such, Plaintiff raises one issue on appeal: whether the Trial Court erred in granting defendants' motion for directed verdict on Plaintiff's claim for libel.[2]

Our Supreme Court discussed the standard under which an appellate court must review a motion for a directed verdict in *Johnson v. Tennessee Farmers Mut. Ins. Co.*, stating:

> In reviewing the trial court's decision to deny a motion for a directed verdict, an appellate court must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence. *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003). A motion for a directed verdict should not be granted unless reasonable minds could reach only one conclusion from the evidence. *Id.* The standard of review applicable to a motion for a directed verdict does not permit an appellate court to weigh the evidence. *Cecil v. Hardin*, 575 S.W.2d 268, 270 (Tenn. 1978). Moreover, in reviewing the trial court's denial of a motion for a directed verdict, an appellate court must not evaluate the credibility of witnesses. *Benson v. Tenn. Valley Elec. Coop.*, 868 S.W.2d 630, 638-39 (Tenn. Ct. App. 1993). Accordingly, if material evidence is in dispute or doubt exists as to the conclusions to be drawn from that evidence, the motion must be denied. *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995).

*Johnson v. Tennessee Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006).

"A libel action involves written defamation and a slander action involves spoken defamation. The basis for an action for defamation, whether it be slander or libel, is

---

[2]Plaintiff raised no issues on appeal regarding his other claims, including his claim for slander.

that the defamation has resulted in an injury to the person's character and reputation." *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.*, 876 S.W.2d 818, 820 (Tenn. 1994). In *Sullivan v. Baptist Mem. Hosp.*, our Supreme Court explained:

> To establish a prima facie case of defamation in Tennessee, the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *See* Restatement (Second) of Torts § 580 B (1977); *Press, Inc. v. Verran*, 569 S.W.2d 435, 442 (Tenn. 1978). "Publication" is a term of art meaning the communication of defamatory matter to a third person. *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821 (Tenn. 1994).

*Sullivan v. Baptist Mem. Hosp.*, 995 S.W.2d 569, 571-72 (Tenn. 1999).

In *Davis v. The Tennesseean*, this Court discussed damages in a defamation case as follows:

> "[T]he basis for an action for defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the person's character and reputation." *Quality Auto Parts*, 876 S.W.2d at 820. To be actionable, the allegedly defamatory statement must "constitute a serious threat to the plaintiff's reputation." *Stones River Motors, Inc. v. Mid-South Publ'g Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983). *Damages from false or inaccurate statements cannot be presumed; actual damage must be sustained and proved. Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 416, 419 (Tenn. 1978).

*Davis v. The Tennesseean*, 83 S.W.3d 125, 128 (Tenn. Ct App. 2001)(emphasis added).

Similarly, in *McLeay v. Huddleston*, this Court affirmed the granting of summary judgment to the defendants because the plaintiff failed to establish any injury as a result of the defamatory statements. In reaching this conclusion, we noted that:

> [T]his Court has held that the plaintiff must show that her standing in the community and her public reputation for character has been injured by the alleged defamatory statement and that as a result she suffered real or actual damages due to that loss of standing or reputation.

*McLeay v. Huddleston*, No. M2005-02118-COA-R3-CV, 2006 Tenn. App. LEXIS 655, at *26 (Tenn. Ct. App. Oct. 6, 2006), *Rule 11 perm. app. denied Feb. 26, 2007*.

The statement that Plaintiff claimed was defamatory was the Report. To continue our analysis, we again note that the record on appeal contains no transcript of the trial. Furthermore, we note that the record shows that Plaintiff submitted a proposed statement of the evidence, which the Trial Court specifically rejected. Instead, the Trial Court modified a statement of the evidence prepared by defendants and then approved and adopted defendants' statement of the evidence. In his brief on appeal, Plaintiff argues facts which do not appear within the Statement of the Evidence approved and adopted by the Trial Court. As there is no transcript in the record on appeal, we are constrained by the evidence contained within the Statement of the Evidence as approved and adopted by the Trial Court.

Even assuming solely for purposes of this appeal that the narrative of the report qualified as a written statement by Mr. Cartwright, taking the strongest legitimate view of the evidence in favor of Plaintiff, construing all evidence in Plaintiff's favor and disregarding all countervailing evidence, as we must, we still find that Plaintiff failed to produce any evidence that Mr. Cartwright published any untrue statement about Plaintiff with knowledge that the statement was false and defaming to Plaintiff, or with reckless disregard for the truth of the statement, or with negligence in failing to ascertain the truth of the statement. Plaintiff himself admitted that the statements Mr. Cartwright made, which were reflected in the narrative of the Report, were true. The evidence shows that the portion of the Report which states "THEFT FROM BUSINESS BY EMPLOYEE" was not language used by Mr. Cartwright or a statement made by Mr. Cartwright, but was based upon a code selected by Officer Norris.

Furthermore, the evidence in the record on appeal shows that Plaintiff suffered no damages as a result of the statements made in the Report. Plaintiff testified that he has maintained his current employment since he left CCT and further testified that his income now is more than when he worked at CCT. Plaintiff admitted that he has sought no psychological or medical treatment as a result of the defendants' actions. He offered no proof at trial that his reputation was damaged. Plaintiff admitted that he was not a member of any church, civic organization, non-profit board, or a volunteer for any organization, and admitted that he could not name one person other than his wife and CCT's employees who were aware of the Report. Plaintiff admitted that he has a good marriage and that his reputation with his wife was not harmed by the Report. Plaintiff could not name one person who thought less of him as a result of the Report. The record on appeal simply is devoid of any evidence of damages.

## **Conclusion**

Given all of the above, we find no error in the Trial Court's December 6, 2012 order granting defendants' motion for directed verdict. The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellant, Charles Nardone, and his surety.

_____
D. MICHAEL SWINEY, JUDGE