IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 13, 2009

## CARL E. WATSON v. ROBERT P. FOGOLIN, M.D.

**Appeal from the Circuit Court for Davidson County**
**No. 08C-1535     Joseph P. Binkley, Jr., Judge**

_____

**No. M2009-00327-COA-R3-CV - April 1, 2010**

_____

The plaintiff, proceeding pro se, initially brought suit in General Sessions Court against his former physician for defamation (libel and slander), breach of contract, and violation of the privacy provision of the Health Insurance Portability and Accountability Act ("HIPAA"). The General Sessions Court awarded a judgment of $25,000 to the plaintiff. The defendant timely appealed to the Circuit Court and filed a motion for summary judgment. The plaintiff then amended his claims to include an alleged violation of the Federal Privacy Act of 1974 and medical malpractice. Following a hearing, the Circuit Court granted summary judgment to the defendant physician, reversing the Sessions Court judgment and holding that (1) the defamation claim was barred by the statute of limitations; (2) Department of Education forms completed by the defendant physician on behalf of the plaintiff did not constitute a contract; (3) HIPAA and Federal Privacy Act of 1974 claims had been withdrawn by the plaintiff; and (4) the plaintiff was unable to produce expert testimony to prove a claim of medical malpractice. The plaintiff timely appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J. joined.

Carl E. Watson, Nashville, Tennessee, pro se appellant.

Garrett E. Asher, Nashville, Tennessee, for appellee, Robert P. Fogolin, M.D.

**OPINION**

**I. BACKGROUND**

The events that gave rise to this action began when appellant Carl E. Watson sought treatment from appellee Robert P. Fogolin, M.D. for chronic hip pain. Dr. Fogolin is a board certified orthopaedic surgeon, who has practiced in Tennessee since 1997. On January 3, 2002, Mr. Watson, who was fifty-three years old, saw Dr. Fogolin for the first time in Dr. Fogolin's clinic after being referred by his primary care physician. Dr. Fogolin took a medical history, performed a physical examination, and took x-rays of both hips. He diagnosed Mr. Watson with bilateral hip degenerative joint disease. Dr. Fogolin told Mr. Watson that the best plan of treatment would be bilateral total hip arthroplasty (commonly known as hip replacement surgery). The doctor planned to operate on the left hip first and then the right hip six to twelve weeks later. Dr. Fogolin told Mr. Watson that he would need medical and dental clearance before surgery could be performed.

On July 22, 2002, Mr. Watson returned to Dr. Fogolin's office, where Dr. Fogolin again diagnosed him with degenerative joint disease in both hips. Mr. Watson asked the doctor to complete a "Total and Permanent Disability Cancellation Request" form, provided by the United States Department of Education ("ED").[1] Dr. Fogolin made a note on the medical record for this visit, stating that Mr. Watson "was recommended to come back to me in regards to some disability papers. . . . He does not want to have hip replacements at this time that I had recommended from six months ago. . . . " On the office visit record for July 22, 2002, Dr. Fogolin's treatment plan for Mr. Watson, reads:

> The patient does have significant disability. He will have a great deal of trouble trying to do any type of work because of the severe hip DJD [degenerative joint disease]. However, I recommend that he had hip replacement so we can remove the pain. There is always the potential if he does well to go back to work whether it be sedentary or with limitations. However, the patient is scared to undergo this procedure. I recommend that he still has to stop smoking. However, I am happy with his weight. He needs to obtain dental clearance, medical clearance and then instruct me on which hip and how he wants to provide blood. I want some repeat x-rays since it has been over six months since I saw him. We will obtain AP pelvis and lateral views of both hips.

Dr. Fogolin completed and signed the "Physician's Certification" section of the ED form on July 22, 2002. He entered Mr. Watson's diagnosis as "severe bilateral hip osteoarthritis (degenerative joint disease)."

Three years and eight months later, in March 2006, the ED sent Dr. Fogolin a second

---

[1]Mr. Watson had signed the "Borrower Cancellation Request" section of the form on July 16, 2002.

form regarding Mr. Watson's condition. This form had only the title of "Federal Student Aid" and gave the following instructions: "Your office confirmed a permanent disability condition for the patient indicated below [Mr. Watson]. In order to discharge this patient's loan(s), additional information is required within 3 business days." The form defines an individual who is permanently disabled as one who is "unable to work and earn money because of an injury or illness that is expected to continue indefinitely or result in death." The form instructs the physician that "[i]f the individual is able to work even on a limited basis, currently or in the future, he or she is not considered to have a total and permanent disability as defined above." In answer to the question, "Is the condition temporary?" Dr. Fogolin checked, the "No" box. In answer to the question, "In your best professional opinion, will the individual ever have the ability to engage in any form of employment?" Dr. Fogolin checked the "Yes" box and wrote, "after recovery from surgeries" in the margin.

On March 23, 2006, Dr. Fogolin sent a copy of the completed Federal Student Aid form to Mr. Watson. These two forms represent the only evidence in the record of communication between Dr. Fogolin and the ED regarding Mr. Watson. In a notice dated April 6, 2006, the ED denied Mr. Watson's student loan discharge request because he had failed the necessary medical review for his condition to meet the ED's definition of total and permanent disability.

Mr. Watson filed suit against Dr. Fogolin for defamation (libel and slander), breach of contract, and violation of the privacy provision of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). The General Sessions Court awarded a judgment of $25,000 to Mr. Watson.[2] Dr. Fogolin timely appealed to the Circuit Court and filed a motion for summary judgment. At a hearing on January 9, 2009, the Circuit Court granted Mr. Watson's oral Motion to Amend to assert claims of a violation of the Federal Privacy Act of 1974 and medical malpractice. The court reset the hearing for January 22, 2009, when it heard all of Mr. Watson's claims. The Circuit Court granted summary judgment to Dr. Fogolin, reversing the Sessions Court judgment and holding that (1) the defamation claim was barred by the statute of limitations; (2) Department of Education forms completed by Dr. Fogolin did not constitute a contract; (3) HIPAA and Federal Privacy Act of 1974 claims had been withdrawn by Mr. Watson; and (4) Mr. Watson was unable to produce expert testimony to prove a claim of medical malpractice. Mr. Watson timely appealed.

## II. ISSUES

We restate the issues presented as follows:

_____

[2]The record contains no information regarding the basis for the award by the General Sessions Court.

A.      Whether the trial court erred in holding that Dr. Fogolin's defamation claim was barred by the statue of limitations.

B.      Whether the trial court erred in holding that there could be no breach of contract because no contract existed between Mr. Watson and Dr. Fogolin.

C.      Whether the trial court erred in dismissing Mr. Watson's Federal Privacy Act of 1974 claim.

D.      Whether the trial court erred in holding that Dr. Fogolin successfully negated an essential element of Mr. Watson's medical malpractice claim because only Dr. Fogolin presented expert proof regarding the recognized standard of acceptable professional practice of a physician in Dr. Fogolin's specialty and locale.

## III.  STANDARD OF REVIEW

A pro se litigant, who has decided to represent himself, is "entitled to fair and equal treatment by the courts." *Young v. Barrow*, 130 S.W.3d 59, 62 (Tenn. Ct. App. 2003) (citing *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000)). We measure the papers prepared by pro se litigants by less stringent standards than those applied to papers prepared by attorneys. *Id.* at 63 (internal citations omitted). Thus, courts "should give effect to the substance, rather than the form or terminology of a pro se litigant's papers." *Id.* (internal citations omitted). As we grant such consideration to a pro se litigant who is untrained in the law, it is also important that we "be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Id.*

It is apparent from Mr. Watson's pleadings that he has taken time to study the standard of review for summary judgment in Tennessee. For example, the substance of Mr. Watson's argument regarding the contract claim is that the trial court erred in granting summary judgment because he believes that the court's holding of no contract is a factual determination that should be heard at trial. Mr. Watson is correct in his overall understanding that genuine issues of material fact are not to be decided on summary judgment. *See* Tenn. R. Civ. P. 56; *Hannan v. Alltel Publ'g*, 270 S.W.3d 1, 5 (Tenn. 2008). Where his understanding fails is in what constitutes a genuine issue of material fact. To follow the contract example further, there is no factual dispute regarding the content of the two ED documents, and Mr. Watson has stated that these forms are the "bases for all the claims filed." Whether the ED documents comprise a contract is then a matter of law and therefore appropriate for determination on summary judgment. *See Petersen v. Genesis*

4

*Learning Ctrs. & Therapeutic Interventions, Inc.*, No. M2004-01503-COA-R3-CV, 2005 WL 3416303, at *4 (Tenn Ct. App. W.S., Dec. 13, 2005).

In reviewing a trial court's grant of a motion for summary judgment, this court must determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). Our inquiry involves only a question of law with no presumption of correctness attached to the lower court's judgment. *Id.* Under Tenn. R. Civ. P. 56.04, "[s]ummary judgment is appropriate when the moving party can show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Hannan*, 270 S.W.3d at 5 (Tenn. 2008) (citing Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993)). In Tennessee, the moving party has the burden of production and to shift that burden to the nonmoving party must either

      (1)      affirmatively negate an essential element of the nonmoving party's claim; or

      (2)      show that the nonmoving party cannot prove an essential element of the claim at trial.

*Hannan*, 270 S.W.3d at 9. A "conclusory assertion" is not enough to shift the burden. *Id.* at 5 (quoting *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). It is also not enough for the moving party to "cast doubt on a party's ability to prove an element at trial." *Hannan*, 270 S.W.3d at 8.

## IV. ANALYSIS

### A. DEFAMATION

The trial court found that Mr. Watson's defamation claims of slander and libel were barred by the applicable statutes of limitations. The law of defamation includes both slander, which is spoken, and libel, which is written. *Quality Auto Parts, Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994). The basis for a defamation claim is a statement, whether spoken or written, that has caused injury to the plaintiff's character and reputation. *See id.* Tennessee courts have long recognized libel as the "greater wrong," and that recognition is evident in Tennessee's differing statutes of limitations for slander and libel. *Id.* at 821 (citing *Williams v. Karnes*, 23 Tenn. 9, 11 (1843); *Prosser and Keeton on Torts* § 112 at 785 (West 5th ed. 1984 & Supp. 1988)). Under Tenn. Code Ann. § 28-3-103, an action for slander must "be commenced within six (6) months after the words are uttered." Tenn. Code. Ann. § 28-3-103 (2000). Under Tenn. Code Ann. § 28-3-104 (2000), an action for libel must "be commenced within one (1) year after the cause of action accrued." *Quality Auto Parts*, 876

S.W.2d at 821.

In this case, the alleged defamatory statement is Dr. Fogolin's communication with the ED regarding the effect of Mr. Watson's medical condition on his future ability to work. To prevail on an action for slander, Mr. Watson would have to show that he was defamed by an oral statement made by Dr. Fogolin to the ED. Mr. Watson would also have to show that such a statement was uttered no more than six months before he filed the claim. *See id.* at 822 (holding that the six-month statute of limitations for slander begins accruing as soon as the defamatory words are uttered). Mr. Watson presented no evidence of spoken communication between Dr. Fogolin and the ED and would clearly be unable to show at trial that slander had occurred within six months of his filing suit in March 2008. The trial court correctly concluded that Mr. Watson's slander claim was barred by the six-month statute of limitations. Moreover, on appeal, Mr. Watson requested in his brief that "the slander charge be amended to a libel (one) charge."

To prevail on an action for libel, Mr. Watson would have to show that he was defamed by a written statement made by Dr. Fogolin to the ED and bring his cause of action within the one-year statute of limitations. Tenn. Code Ann. § 28-3-104. In cases such as the one at bar, where the alleged libel is contained within documents not available to the general public, the statute of limitations begins to run when the plaintiff knew, or with reasonable diligence could have discovered, that he had been defamed. *See Leedom v. Bell*, No. 03A01-9704-CV-00136, 1997 WL 671918, at *7 (Tenn. Ct. App. E.S., Oct. 29, 1997). In *Leedom*, this court held that the discovery rule, which ensures fairness by not requiring "that suit be filed when circumstances totally beyond the control of the injured party make it impossible for him to bring suit," should be applied to libel cases. *Id.* at *6-7 (quoting *Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn. 1974)); *see also Ali v. Moore*, 984 S.W.2d 224, 228 (Tenn. Ct. App. 1998) (citing *Leedom* with approval but holding that the discovery rule does not apply to a public broadcast).

The written statement that Mr. Watson alleges to be defamatory is the ED Student Financial Aid form completed by Dr. Fogolin in March 2006. This form was also the last known communication between Dr. Fogolin and the ED regarding Mr. Watson's condition. In his affidavit, Dr. Fogolin stated that his office sent a copy of the completed Federal Student Aid form to Mr. Watson on March 23, 2006. Mr. Watson produced no evidence to dispute this claim. The trial court found that "Mr. Watson received notice of any allegedly defamatory statements by the end of March, 2006, at the latest," over two years before Mr. Watson filed this action on March 26, 2008.[3] We hold that the trial court did not err in this

---

[3]Mr. Watson initially filed two General Sessions Warrants, one for the 2002 form completed by Dr. Fogolin and one for the 2006 form. The first warrant was filed on March 26, 2008, and the second on

6

finding. Moreover, in a notice dated April 6, 2006, the ED notified Mr. Watson that his student loan discharge request had failed the medical review necessary for his condition to meet ED's definition of total and permanent disability. This communication would also constitute notice to Mr. Watson well in advance of one year before he filed his claim. The trial court correctly concluded that Mr. Watson's libel claim is barred by the statute of limitations. We affirm.

## B. BREACH OF CONTRACT

To prove breach of contract, a plaintiff must first establish that an enforceable contract existed between the parties. *See Seramur v. Life Care Ctrs. of Am. Inc.*, No. E2008-01364-COA-R3-CV, 2009 WL 890885, at *2 (Tenn. Ct. App. E.S., Apr. 2, 2009) (citing *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006)). "A contract 'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.'" *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) (quoting *Johnson v. Cent. Nat'l Ins. Co. of Omaha*, 356 S.W.2d 277, 281 (Tenn. 1962)) (internal citations omitted). Tennessee courts have also defined a contract more simply as "'an agreement, upon sufficient consideration, to do or not to do a particular thing.'" *Calabro v. Calabro*, 15 S.W.3d 873, 876 (Tenn. Ct. App. 1999) (quoting *Smith v. Pickwick Elec. Coop.*, 367 S.W.2d 775, 780 (Tenn. 1963) (internal citation omitted)).

Mr. Watson bases his contract claim on the two ED forms completed by Dr. Fogolin in 2002 and 2006. Mr. Watson's essential argument is that when Dr. Fogolin completed the first form ("Total and Permanent Disability Cancellation Request"), he "agreed" with the language on the form asking whether the patient, Mr. Watson, suffered from a "disabling condition that [was] expected to continue indefinitely or result in death." Mr. Watson then argues that when Dr. Fogolin completed the second form ("Federal Student Aid"), he violated this "agreement" by checking the "yes" box by the question, "In your best professional opinion, will the individual ever have the ability to engage in any form of employment?" and writing, "after recovery from surgeries" in the margin. The trial court "specifically [found] that these forms did not create a contract between Mr. Watson and Dr. Fogolin as a matter of law." We agree.

In giving his medical opinion to the ED, Dr. Fogolin was not contracting to do or not

---

April 4, 2008. The trial court found that the filing date for the lawsuit as a whole was March 2008. The earlier date is the one more favorable to Mr. Watson in the statute of limitations analysis and is the one this Court will use without further question.

7

do anything for Mr. Watson. If a contract existed between the two parties, it would have been a physician-patient contract to exchange medical knowledge and treatment for payment. The ED forms do not form such a contract. On Mr. Watson's authorization, Dr. Fogolin completed the first ED form as a statement of his medical opinion regarding Mr. Watson's condition. Dr. Fogolin then explained this opinion further on the second form. Summary judgment for Dr. Fogolin on the breach of contract claim was correct because the ED forms do not represent a contract that could be breached.

## C. FEDERAL PRIVACY ACT OF 1974

During the summary judgment hearing, the trial court found that Mr. Watson "agreed with arguments of the Defendant that the claims of violation of HIPAA and the Federal Privacy Act of 1974 could not be brought before this Court and withdrew these claims." When the trial court granted Mr. Watson's oral motion to amend his complaint, it did so to enable Mr. Watson to amend his HIPAA claim to a Federal Privacy Act of 1974 claim, and according to the court, to add a medical malpractice claim. In his response brief, Mr. Watson acknowledged that he amended his HIPAA claim to a Federal Privacy Act of 1974 claim. He then stated that during the summary judgment hearing, he requested that "the Privacy Act be amended to the Tennessee Patient Privacy claim." There is no genuine issue on appeal regarding the federal claim under either HIPAA or the Federal Privacy Act of 1974 because Mr. Watson agrees that he withdrew both claims.

The only question remaining within Mr. Watson's collective privacy claims is whether he has properly raised a claim under the Patient's Privacy Protection Act of 1996, Tenn. Code Ann. §§ 68-11-1501 to -1503. The trial court specifically found that "Mr. Watson was provided the opportunity to present all arguments in support of his claims and in opposition to Defendant's Motion for Summary Judgment to the Court." The trial court dismissed the HIPAA and Federal Privacy Act of 1974 claims because Mr. Watson withdrew them. The court did not note any motion by Mr. Watson to amend the Federal Privacy Act of 1974 claim to one under Tennessee's Patient's Privacy Protection Act of 1996.

The Tennessee Rules of Procedure and the Rules of the Court of Appeals set forth rules regarding appellate practice, specifically, the form and content of a party's brief. *See Bean v. Bean*, 40 S.W.3d 52, 53 (Tenn. Ct. App. 2000). Tenn. R. App. P. 27 requires eight sections in an appellant's brief, including a statement of the issues and an argument section, "setting forth the contentions of the appellant with respect to the issues presented . . . including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record. . . ." Tenn. R. App. P. 27(4), (7). The

8

Rules of the Court of Appeals outlines the format and content of the written argument regarding each issue on appeal. *See Bean*, 40 S.W.3d at 54. Rule 6(b) provides:

> No complaint for reliance upon action by the trial court will be considered on appeal unless the argument thereon contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument upon such assertion contains a reference to the page or pages of the record where evidence of such fact is recorded.

Mr. Watson mentioned what he called the "Tennessee Patient Privacy Claim" twice in his pleadings: once in the "Statement of the Case" section of his appellate brief and once in his response brief. At no time in his appellant brief did Mr. Watson directly address the specific elements of the Patient's Privacy Protection Act of 1996, and at no time did he cite evidence from the record that he had requested such an amendment.

There is no indication in the trial court's Summary Judgment Order or in Dr. Fogolin's brief that either was aware of a claim under the Patient's Privacy Protection Act of 1996, Tenn. Code Ann. §§ 68-11-1501 to -1503. Mr. Watson has not supplied this court with a transcript of the summary judgment hearing or made any reference to evidence of his alleged request. For this court to entertain Mr. Watson's alleged second amendment of his privacy claim would be to cross the boundary between fairness to a pro se litigant and advocacy for that litigant. *See Moore v. State*, No. W2008-02699-COA-R3-CV, 2009 WL 4932203, at *3 (Tenn. Ct. App. W.S., Dec. 23, 2009) (applying the principle that a trial court that constructs a pro se litigant's pleadings too liberally crosses the boundary between "'smoothing bumps in the litigation process and [the court's] responsibility to remain impartial'") (quoting *Discover Bank v. McCullough*, No. M2006-01272-COA-R3-CV, 2008 WL 245976, at *3-4 (Tenn. Ct. App. M.S., Jan. 29, 2008)). We find no reversible error in the trial court's determination that all of Mr. Watson's claims were heard. We also do not find any reversible error in the trial court's determination that the only privacy claims brought -- under HIPAA and the Patient Privacy Protection Act of 1974 -- were withdrawn by Mr. Watson.

## D. MEDICAL MALPRACTICE

Mr. Watson's medical malpractice claim against Dr. Fogolin first came before the trial court on January 9, 2009, when the court granted what it determined to be Mr. Watson's oral "Motion to Amend to assert claims of a violation of the Federal Privacy Act of 1974 and medical malpractice." In his brief, Mr. Watson asserts that he never brought a medical malpractice claim, stating, "I applied the Tennessee medical malpractice claim to allege to negate the essential element(s) of the contract or federal government form [ED forms] which

9

would be in compliance to the [Motion for Summary Judgment] law." Mr. Watson seems to take offense at the court's review of his complaint for medical malpractice allegations. However, the court's interpretation of Mr. Watson's amended charges against Dr. Fogolin as including medical malpractice did not prevent the court from fully reviewing the claims stated by Mr. Watson on his original complaint: libel (slander and defamation), breach of contract, and violation of HIPAA. The gravamen of Mr. Watson's claim is that Dr. Fogolin communicated improperly with the ED when he completed two forms that asked for Dr. Fogolin's medical opinion about Mr. Watson's condition. The trial court viewed Mr. Watson's claims in the most favorable light possible by considering whether a valid medical malpractice claim existed before granting summary judgment to Dr. Fogolin.

To succeed on a medical malpractice action in Tennessee, a plaintiff must prove the following three elements:

> (1)     The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2)     That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3)     As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a) (Supp. 2009); *see also Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 553 (Tenn. 2006). In the case at bar, the trial court found that "Dr. Fogolin's Motion for Summary Judgment was accompanied by expert proof that Dr. Fogolin complied with the recognized standard of acceptable professional practice of a physician in his specialty in his locale." The court further found that Mr. Watson failed to carry his burden of producing an expert witness, which is required to show that the defendant failed to meet the standard of care. Under Tenn. Code Ann.§ 29-26-115(b), such a witness must be "licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case." Tenn. Code Ann.§ 29-26-115(b) (Supp. 2009); *see Williams*, 193 S.W.3d at 554 (holding that under Tenn. Code Ann. § 29-26-115, an expert medical witness must present specific proof of his or her knowledge of the applicable standard of professional care).

Mr. Watson produced no witnesses regarding the relevant standard of professional care. Accordingly, the trial court correctly granted summary judgment to Dr. Fogolin on any claim of medical malpractice because Mr. Watson would have been unable to prove an essential element of the claim.

## V. CONCLUSION

The trial court's order of summary judgment to Dr. Fogolin is affirmed in its entirety. The costs on appeal are assessed against the Appellant, Carl E. Watson.


_____

JOHN W. McCLARTY, JUDGE

11